HEDIN HALL LLP
Frank S. Hedin (Bar No. 291289)
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone:  + 1 (415) 766-3534
Facsimile:   + 1 (415) 402-0058
Email: fhedin@hedinhall.com

BURSOR & FISHER, P.A.
L. Timothy Fisher (SBN 191626)
1990 North California Blvd., 940
Walnut Creek, California 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiffs and the Putative Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWAUN LUCAS; DAVID DOMINGUEZ HOOPER; METE TASIN; and REEJAUNTE SMITH, individually and on behalf of all others similarly situated, | Case No. _____ |
| | **CLASS ACTION** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| SMILEDIRECTCLUB, INC.; and SMILEDIRECTCLUB, LLC, | |
| Defendants. | |

Dawaun Lucas ("Plaintiff Lucas"), David Dominguez Hooper ("Plaintiff Hooper"), Mete Tasin ("Plaintiff Tasin"), and Reejaunte Smith ("Plaintiff Smith") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated,

complain and allege as follows based on personal knowledge as to themselves, on the investigation of their counsel, and on information and belief as to all other matters. Plaintiffs believe that substantial evidentiary support exists for the allegations set forth in this complaint, and that a reasonable opportunity for discovery will reveal such evidence.

## NATURE OF ACTION

1.     Plaintiffs bring this Class Action Complaint for legal and equitable remedies resulting from the illegal actions of SmileDirectClub, Inc. and SmileDirectClub, LLC (collectively, "Defendants") in sending automated text message advertisements to their cellular telephones and the cellular telephones of numerous other individuals across the country, in clear violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## JURISDICTION AND VENUE

2.     The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3.     Personal jurisdiction and venue are proper because Plaintiffs reside in California, including within this District; because Defendants directed the subject unsolicited text messages into this District by sending them to telephone numbers that bear area codes that correspond to geographic locations exclusively within California, including within this District; and because Plaintiffs received Defendants' unsolicited text messages while they were physically present in California, including within this District – such that the claims alleged herein arose in substantial part in this District. Personal jurisdiction and venue are additionally proper in California and within this

District because Plaintiffs' claims arise in substantial part from actions taken by or on behalf of Defendants that originated and emanated from within the State of California. Specifically, Defendants knowingly made, initiated, and transmitted multiple TCPA-violative text messages to Plaintiffs' cellular telephone numbers (as well as millions of TCPA-violative text messages to the cellular telephone numbers of the other unnamed members of the proposed Class) that originated from Twilio Inc.'s corporate headquarters in San Francisco, California. Indeed, Defendants utilized Twilio Inc.'s text-message dialing and transmission technologies (including its web-based APIs and other dialing technologies, both software and hardware based) – technologies which are owned, operated, and maintained by Twilio Inc. on its clients' (including Defendants') behalf at their corporate headquarters and principal place of business in California – in order to transmit the subject text messages to Plaintiffs and the other unnamed members of the proposed Class, numerous of which were thereafter received in California, including in this District (including text messages sent to the Plaintiffs).

## **PARTIES**

4.     Plaintiffs are individuals and "persons" as defined by 47 U.S.C. § 153(39) and residents and citizens of the State of California.  Each of the Plaintiffs resided in and was a citizen of the State of California at all times relevant to this action.

5.     Defendants SmileDirectClub, Inc. (referred to in this paragraph as "SDC, Inc.") and SmileDirectClub, LLC (referred to in this paragraph as "SDC, LLC") collectively own and operate a "teledentistry" company that does business online and at over 300 brick-and-mortar retail locations across the United States. "SDC Inc. is a holding company. Its sole material asset is its equity interest in SDC Financial which, through its direct and indirect subsidiaries, conducts all of the Company's operations.

SDC Financial is a Delaware limited liability company and wholly owns [SDC, LLC] (a Tennessee limited liability company) . . . . Because SDC Inc. is the managing member of SDC Financial, SDC Inc. indirectly operates and controls all of the business and affairs of SDC Financial and its subsidiaries," including of SDC Financial's wholly owned subsidiary SDC, LLC.[1]  Thus, both Defendant SDC, Inc. and Defendant SDC, LLC "integrate[] the marketing" for the "teledentistry platform" that is advertised and made commercially available through Defendants' "direct-to-consumer model,"[2] including by overseeing the transmission of automated text message advertisements to consumers in California and throughout the country.  Defendants are "persons" as defined by 47 U.S.C. § 153(39).

6.     Non-party Twilio Inc. ("Twilio") is a cloud communications platform as a service company that maintains, and at all times mentioned herein maintained, its corporate headquarters and principal place of business in San Francisco, California. Twilio provides access to its California-based platform and related technologies to its clients, including Defendants, to enable them to programmatically make and receive phone calls, send and receive text messages, and perform other related communication functions using its web-service APIs and other related dialing technologies. Specifically, pursuant to a contract entered into between Defendants and Twilio, Defendants have directed and continue to direct Twilio, acting as Defendants' text-transmitting agent, to use its automated dialing technology to transmit text messages to consumers, including the text messages at issue in this case, on Defendants' behalf. All

---

[1]     U.S. Securities and Exchange Commission, SmileDirectClub, Inc.'s Form 10-Q for the quarterly period ended March 31, 2020, p. 8, *available at* https://investors.smiledirectclub.com/static-files/5a9dc0ac-7967-470c-8008-5760c6edb938.

[2]     *Id.*

---

or substantially all of the text-message log files reflecting Defendants' transmission of the subject text messages to Plaintiffs and the other members of the putative class, all or substantially all of the documents, communications, and electronically stored information concerning the dialing technologies used to make, initiate, and transmit the subject text messages, and all or substantially all of the witnesses with personal knowledge concerning such records and technologies are located at Twilio's headquarters and principal place of business in California.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

1.      "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants, Inc*, No. 19-631, 2020 WL 3633780, at *2 (U.S. July 6, 2020).

2.      Thus, in 1991, with overwhelming public support, "Congress passed and President George H. W. Bush signed the Telephone Consumer Protection Act" to combat against these instrusive calls.  *Id.*, at *3; *see also id.* ("The [TCPA] responded to a torrent of vociferous consumer complaints about intrusive robocalls."). "A leading Senate sponsor of the TCPA captured the zeitgeist in 1991, describing robocalls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.'" *Id.* (quoting 137 Cong. Rec. 30821 (1991)). "In enacting the TCPA, Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.' To that end, the TCPA imposed various restrictions on the use of automated telephone equipment." *Barr,*  2020 WL 3633780, at *3 (citation omitted).

---

3. "As relevant here, one restriction prohibit[s] 'any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice' to 'any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.'" *Id.* (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). This restriction "bars both automated voice calls and automated text messages." *Id.,* at *3 n.1 (citing See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003)).

4. Moreover, as implemented by the Federal Communications Commission ("FCC"), the TCPA requires callers to obtain recipients' prior "express written consent" prior to transmitting autodialed calls or text messages containing "advertising" or "telemarketing" material. *See* 47 C.F.R. § 64.1200(a)(2) (barring any call, including any text message, "[t]]hat includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party").

5. According to findings by the FCC, autodialed calls and text messages are prohibited because receiving them is a greater nuisance and more invasive than receiving live or manually dialed telephone solicitations. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes are used. Moreover, because cellular telephones are

carried on their owners' persons, unsolicited calls and texts transmitted to such devices via an autodialer are distracting and aggravating to their recipients and intrude upon their recipients' seclusion.

6.      Thus, "[f]or nearly thirty years, the people's representatives in Congress have been fighting back" on behalf of American consumers to combat against the proliferation of these invasive, autodialed calls and text messages.  *Barr*, 2020 WL 3633780, at *2.  Nevertheless, despite the restrictions imposed by the TCPA, still today "[t]he Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone." *Id*.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

7.      Plaintiff Lucas was at all times mentioned herein the subscriber or customary user of the cellular telephone number (310) ***-2227 (the "2227 Number"). The 2227 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

8.      During the preceding four years, Defendants transmitted, by themselves or through an intermediary or intermediaries, multiple text messages to the 2227 Number and at least one text message (identical to or substantially the same as those received by Plaintiff Lucas) to each member of the putative Class.

9.      For example, in or about May 2020, Defendants transmitted or caused to be transmitted, by themselves or through an intermediary or intermediaries, and without Plaintiff Lucas's prior "express written consent," the below-depicted text messages to the 2227 Number:

---

CLASS ACTION COMPLAINT            7        Civil Case No.: _____

The links in the above-depicted text messages redirect to websites operated and maintained by or on behalf of Defendants, where Defendants sell their products and services to consumers for commercial profit.

10.     Plaintiff Hooper was at all times mentioned herein the subscriber or customary user of the cellular telephone number (626) ***-3496 (the "3496 Number"). The 3496 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

11.     During the preceding four years, Defendants transmitted, by themselves or through an intermediary or intermediaries, multiple text messages to the 3496 Number and at least one text message (that was identical to or substantially the same as those received by Plaintiff Hooper) to each member of the putative Class.

CLASS ACTION COMPLAINT          8          Civil Case No.: _____

12.     For example, in or about June 2018, December 2018, and February 2019, Defendants transmitted or caused to be transmitted, by themselves or through an intermediary or intermediaries, and without Plaintiff Hooper's prior "express written consent," the below-depicted text messages to the 3496 Number:

  

The links in the above-depicted text messages redirect to websites operated and maintained by or on behalf of Defendants, where Defendants sell their products and services to consumers for commercial profit.

13.     Plaintiff Tasin was at all times mentioned herein the subscriber or customary user of the cellular telephone number (650) ***-3656 (the "3656 Number"). The 3656 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

---

CLASS ACTION COMPLAINT          9          Civil Case No.: _____

14.     During the preceding four years, Defendants transmitted, by themselves or through an intermediary or intermediaries, multiple text messages to the 3656 Number and at least one text message (that was identical to or substantially the same as those received by Plaintiff Tasin) to each member of the putative Class.

15.     For example, in or about May 2020 and June 2020, Defendants transmitted or caused to be transmitted, by themselves or through an intermediary or intermediaries, and without Plaintiff Tasin's prior "express written consent," the below-depicted text messages to the 3656 Number:



The links in the above-depicted text messages redirect to websites operated and maintained by or on behalf of Defendants, where Defendants sell their products and services to consumers for commercial profit.

16.    Plaintiff Smith was at all times mentioned herein the subscriber or customary user of the cellular telephone number (213) ***-6093 (the "6093 Number"). The 6093 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

17.    During the preceding four years, Defendants transmitted, by themselves or through an intermediary or intermediaries, multiple text messages to the 6093 Number and at least one text message (that was identical to or substantially the same as those received by Plaintiff Smith) to each member of the putative Class.

18.    For example, in or about March 2019, Defendants transmitted or caused to be transmitted, by themselves or through an intermediary or intermediaries, and without Plaintiff Smith's prior "express written consent," the below-depicted text message to the 6093 Number:



---

CLASS ACTION COMPLAINT          11          Civil Case No.: _____

The link in the above-depicted text message redirect to a website operated and maintained by or on behalf of Defendants, where Defendants sell their products and services to consumers for commercial profit.

19. All of the subject text messages sent to Plaintiffs and the members of the putative Class constituted "advertisements" or "telemarketing" messages within the meaning of the TCPA and its implementing regulations because each such message was aimed at promoting the commercial availability of Defendants' products and services and ultimately selling such products and services. Defendants offered such products and services for sale to Plaintiffs and the members of the putative class for the purpose of deriving commercial profit from the purchase of any such products or services ultimately made by the consumers to whom the subject text messages were directed.

20. All of the subject text messages received by Plaintiffs and the members of the putative Class were transmitted by or on behalf of Defendant without the requisite prior "express written consent" of any of the Plaintiffs or any member of the putative Class.

21. Each unsolicited text message sent by or on behalf of Defendants to the Plaintiffs' cellular telephone numbers originated from one of Defendants' dedicated SMS short codes – including such numbers as 75093, 25943, or 80812 – each of which is leased or owned by or on behalf of Defendants and is used by or on behalf of Defendants for the exclusive purpose of transmitting their text messages to consumers *en masse*, in an automated fashion and without human intervention.

22.     Because Plaintiffs' cellular phones alerts them whenever they receive a text message, each unsolicited text message transmitted by or on behalf of Defendants to Plaintiffs' cellular telephone numbers invaded the recipient Plaintiff's privacy and intruded upon his or her seclusion upon receipt.

23.     All telephone contact by Defendants or affiliates, subsidiaries, or agents of Defendants to Plaintiffs' cellular telephone numbers and to the cellular telephone numbers belonging to the unnamed Class members occurred using an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A). Specifically, Defendants utilized an "automatic telephone dialing system" because all such text messages were sent from a dedicated SMS short code used for the exclusive purpose of transmitting text messages to consumers *en masse*; because the subject text messages contained the same or substantially the same generic, pro forma content; because the dialing equipment utilized by or on behalf of Defendants to send such messages includes features substantially similar to a predictive dialer, inasmuch as it is capable of making or initiating numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by or on behalf of Defendants to make or initiate such messages have the capacity to store, produce, and dial random or sequential numbers, and to receive and store lists of telephone numbers, and to then dial such numbers, *en masse*, in an automated fashion without human intervention.

24.     And indeed, Defendants actually transmitted the text messages at issue in this case to Plaintiffs and all other putative Class members in an automated fashion and

without human intervention, with hardware and software that received and stored telephone numbers and then automatically dialed such numbers.

25.     The automatic telephone dialing technology utilized by or on behalf of Defendants to transmit the subject text messages to Plaintiffs and the members of the Class was provided by Twilio, which maintains its corporate headquarters and principal place of business in, and operated the technology implicated in this case from (and thereby transmitted the subject text messages from), its headquarters and principal place of business in California.

26.     None of the Plaintiffs, nor any other member of the putative Class, provided his or her prior "express written consent" to Defendants or any affiliate, subsidiary, or agent of Defendants to transmit the subject text message advertisements to their cellular telephone numbers by means of an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

27.     None of Defendants' text messages to the Plaintiffs' cellular telephone numbers or to any putative Class member's cellular telephone number was sent for an emergency purpose.

## CLASS ALLEGATIONS

28.     Class Definition. Plaintiffs bring this civil class action on behalf of themselves individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23.  The "Class" which Plaintiffs seek to represent is comprised of and defined as follows:

> All persons in the United States who, at any time between the four years preceding the filing of this action and the present:
>
> (1) subscribed to a cellular telephone service;

(2) received, at the telephone number assigned to such service, at least one text message promoting the sale of Defendants' goods or services sent by or on behalf of Defendants using the same or substantially the same dialing technology that Defendants used to transmit the subject text messages to Plaintiff; and

(3) for whom Defendants lack any record establishing the person's provision of "express written consent" to receive such message(s) prior to the initiation of such message(s).

29.    Excluded from the class are Defendants, their officers and directors, members of the immediate families of the foregoing, legal representatives, heirs, successors, or assigns of the foregoing, and any entity in which Defendants have a controlling interest.

30.    Plaintiffs reserve the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

31.    Plaintiffs and all Class members have been impacted and harmed by the acts of Defendants or their affiliates, agents, or subsidiaries acting on their behalf.

32.    This Class Action Complaint seeks injunctive relief and monetary damages.

33.    Defendants or any affiliates, subsidiaries, or agents of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.   Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

34.    This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b).   This class action satisfies

the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

35.     On application by Plaintiffs' counsel for class certification, Plaintiffs may also seek certification of subclasses in the interests of manageability, justice, or judicial economy.

36.     <u>Numerosity</u>.   The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States.   It is, therefore, impractical to join each member of the Class as a named plaintiff.   Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.   Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

37.     <u>Typicality</u>.   Plaintiffs each received at least one text message from Defendant that originated from an SMS short code operated and maintained by or on behalf of Defendants, and Defendants lack any record establishing any of the Plaintiffs' prior "express written consent" to receive any such messages within the meaning of the TCPA.   Consequently, the claims of Plaintiffs are typical of the claims of the members of the Class, and Plaintiffs' interests are consistent with and not antagonistic to those of the other Class members they seek to represent.   Plaintiffs and all members of the Class have been impacted by, and face continuing harm arising out of, Defendants' TCPA-violative misconduct as alleged herein.

38.     <u>Adequacy</u>.   As the proposed Class representatives, Plaintiffs have no interests adverse to or which conflict with the interests of the absent members of the

Class, and they are able to fairly and adequately represent and protect the interests of such a Class.  Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue these claims. If necessary as the litigation (including discovery) progresses, Plaintiffs may seek leave to amend this Class Action Complaint to modify the Class definition set forth above, add additional Class representatives, or assert additional claims.

39.   <u>Competency of Class Counsel</u>.   Plaintiffs have retained and are represented by experienced, qualified, and competent counsel committed to prosecuting this action.  Plaintiffs' counsel are experienced in handling complex class action claims, including in particular claims brought under the TCPA (as well as other consumer protection and data-privacy statutes).

40.   <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

  a)  Whether Defendants or affiliates, subsidiaries, or agents of Defendants sent text message advertisements to Plaintiffs' and Class members' cellular telephones;

  b)  Whether such text messages were sent using an "automatic telephone dialing system";

c) Whether Defendants can meet their burden to show that they (or any disclosed affiliate, subsidiary, or agent of Defendants acting on their behalf) obtained prior "express written consent" within the meaning of the TCPA to transmit the subject text messages to the recipients of such messages, assuming such an affirmative defense is timely raised;

d) Whether Defendants or any affiliates, subsidiaries, or agents of Defendants should be enjoined from engaging in such conduct in the future.

41.    <u>Superiority.</u>  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the prosecution of individual litigation on behalf of each Class member is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the court system could not; multiple trials of the same factual issues would magnify the delay and expense to all parties and the court system.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class.  Plaintiffs anticipate no difficulty in the management of this action as a class action.  Class wide relief is essential to compel compliance with the TCPA and thus protect consumers' privacy. The interests of Class members in individually controlling the prosecution of separate claims is small because the statutory damages recoverable in an individual action for violation of the TCPA are likewise relatively small.  Management of these claims is

likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and because Defendants lack any record reflecting that they obtained the requisite consent from any Class member to be sent such messages. Class members can be readily located and notified of this class action by reference to Defendants' records and, if necessary, the records of Defendant's affiliates, agents (including Twilio), or subsidiaries, as well as of cellular telephone providers.

42.   Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests.  The prosecution of individual actions by Class members could also establish inconsistent results and/or establish incompatible standards of conduct for Defendants.

**CLAIM FOR RELIEF**
**VIOLATION OF THE TELEPHONE**
**CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227)**

43.   Plaintiffs Lucas, Hooper, Tasin, and Smith incorporate by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

44.   Each of the Plaintiffs and each member of the Class received at least one text message sent by or on behalf of Defendants during the class period.   All such messages sent to Plaintiffs and the members of the proposed Class promoted the sale of Defendants' goods or services or the commercial availability of goods or services sold by Defendants; consequently, all such messages constituted "advertising" or

"telemarketing" material within the meaning of the TCPA and its implementing regulations. Additionally, all such messages were sent via the same dialing technology, which qualified as an ATDS within the meaning of the TCPA, as evidenced by the generic nature of the text messages, the use of dedicated telephone numbers to transmit each such message, and the capacities, capabilities, and features of the dialing technology at issue, as alleged above.

45. None of the Plaintiffs nor any other member of the Class provided Defendants his or her prior "express written consent" within the meaning of the TCPA to receive the autodialed text message advertisements at issue in this case.

46. Defendants' use of an ATDS to transmit the subject text message advertisements to telephone numbers assigned to cellular telephone service, including to Plaintiffs' cellular telephone numbers and the numbers of all members of the proposed Class, absent the requisite prior "express written consent," as set forth above, constituted violations of the TCPA by Defendants, including but not limited to violations of 47 U.S.C. § 227(b)(1)(A)(iii).

47. Plaintiffs and all Class members are entitled to, and do seek, an award of $500.00 in statutory damages for each such violation of the TCPA committed by or on behalf of Defendants (or $1,500.00 for any such violations committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

48. Plaintiffs, individually and on behalf of the putative Class, seek an award of attorneys' fees and costs to Plaintiffs' counsel pursuant to Federal Rule of Civil Procedure 23.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Dawaun Lucas, David Dominguez Hooper, Mete Tasin, and Reejaunte Smith pray for relief and judgment in favor of themselves and the Class as follows:

A.      Injunctive relief sufficient to ensure Defendants refrain from violating the TCPA in the future;

B.      Statutory damages of $500.00 for each of the Plaintiffs and each Class member for each of Defendants' violations of 47 U.S.C. § 227(b)(1) (or $1,500.00 for each such violation to the extent committed willfully or knowingly);

C.      An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclass(es) the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the attorneys representing Plaintiffs as counsel for the Class; and

D.      An award of attorneys' fees and costs to Plaintiffs' counsel, payable from any class-wide damages recovered by the Class, pursuant to Federal Rule of Civil Procedure 23.

## **DEMAND FOR JURY TRIAL**

On behalf of themselves and all others similarly situated, Plaintiffs demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims and issues so triable.

---

CLASS ACTION COMPLAINT          21          Civil Case No.: _____

Dated:  July 7, 2020

**HEDIN HALL LLP**

By:   /s/ Frank S. Hedin
        Frank S. Hedin

HEDIN HALL LLP
Frank S. Hedin (Bar No. 291289)
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone:  + 1 (415) 766-3534
Facsimile:    + 1 (415) 402-0058
Email: fhedin@hedinhall.com

BURSOR & FISHER, P.A.
L. Timothy Fisher (SBN 191626)
1990 North California Blvd., 940
Walnut Creek, California 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiffs and the Putative Class*