1  BENESCH, FRIEDLANDER,
   COPLAN & ARONOFF LLP
2  MARK S. EISEN (SBN 289009)
   meisen@beneschlaw.com
3  71 South Wacker Drive, Suite 1600
   Chicago, IL 60606
4  Telephone:  312.212.4949
   Facsimile:   312.767.9192
5  Attorneys for Defendant SmileDirectClub, Inc.
   and SmileDirectClub, LLC
6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        WESTERN DIVISION

11  DAWAUN LUCAS, et al., individually      Case No. 2:20-cv-06059-VAP-E
    and on behalf of all others similarly
12  situated,                               **SMILEDIRECTCLUB, INC.'S AND
                                            SMILEDIRECTCLUB, LLC'S
13                          Plaintiff,       NOTICE OF MOTION AND
                                            MOTION TO DISMISS PLAINTIFF
14       v.                                 HOOPER'S AND TASIN'S CLAIMS
                                            UNDER RULE 12(B)(3) AND
15  SMILEDIRECTCLUB, INC. and               MOTION TO TRANSFER ENTIRE
    SMILEDIRECTCLUB, LLC.,                  ACTION UNDER SECTIONS
16                                          1406(A) AND 1404(A);
                            Defendants.     MEMORANDUM OF POINTS AND
17                                          AUTHORITIES; DECLARATION
                                            OF JUSTIN SKINNER IN
18                                          SUPPORT; DECLARATION OF
                                            IAN KYLE WAILES IN SUPPORT;
19                                          [PROPOSED] ORDER**

20                                          Judge: Honorable Virginia A. Phillips

21                                          Courtroom: 8A, First Street Courthouse

22                                          Hearing Date:  October 19, 2020

23                                          Time: 2:00 P.M.

24                                          Complaint Filed:  July 7, 2020

25

26

27

28

## <u>NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE</u>
## <u>ALTERNATIVE, TO TRANSFER</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on October 19, 2020, in the Courtroom of the Honorable Virginia A. Phillips of the United States District Court for the Central District of California, Courtroom 8A, located at 350 West 1st Street, Los Angeles, California 90012 at 2:00 p.m. or as soon thereafter as the matter may be heard, Defendants SmileDirectClub, Inc. and SmileDirectClub, LLC will move this Court for an order dismissing Plaintiffs Hooper and Tasin under Federal Rule of Civil Procedure 12(b)(3) and transferring the entire action under 28 U.S.C. §§ 1406(a) and 1404(a).

This motion is made on the grounds that venue is improper in this Court as to Plaintiffs Hooper and Tasin, both of whom reside in the Northern District of California and neither of whom allege injury in the Central District.  Further, as a result, severance of their claims under Rule 21 and transfer under Section 1406(a) to the Middle District of Tennessee—the only venue proper as to all parties—would be appropriate and prudent.  Plaintiffs Lucas's and Smith's claims should likewise be transferred to the Middle District of Tennessee under 28 U.S.C. § 1404(a), as doing so would be consistent with the interests of justice and the convenience of the parties and witnesses.  The Middle District of Tennessee is the only venue that would be proper as to all Plaintiffs and Defendants, and having this action venued in a single jurisdiction is the only outcome consistent with judicial economy.

This motion is based on this notice of motion and motion, the memorandum of points and authorities, the Declarations of Justin Skinner and Ian Kyle Wailes, Plaintiffs' Complaint and any arguments presented at the hearing on this motion.

## <u>LOCAL RULE 7-3 CERTIFICATION</u>

Undersigned counsel hereby certifies that on August 24, 2020, counsel for the Parties met and conferred via telephone regarding the issue of improper venue as to

1    Plaintiffs Hooper and Tasin and the issue of transferring this action in its entirety to
2    the Middle District of Tennessee.  The Parties were unable to reach an agreement
3    that would obviate the need for this Motion.

4

5    DATED:      September 8, 2020        Respectfully submitted,

6

7                                        By: /s/ Mark S. Eisen
                                         BENESCH, FRIEDLANDER, COPLAN &
8                                        ARONOFF LLP
                                         Mark S. Eisen (SBN289009)
9                                        meisen@beneschlaw.com
                                         71 South Wacker Drive, Suite 1600
10                                       Chicago, IL 60606
                                         Telephone:  312.212.4949
11                                       Facsimile:   312.767.9192

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 2

I.    The Complaint. ........................................................................................... 2

II.   Plaintiffs Hooper's and Tasin's SmileDirectClub Accounts. ...................... 2

III.  Background Regarding SDCI & SDC, LLC and the Messages at
Issue. ......................................................................................................... 3

DISCUSSION ...................................................................................................... 4

I.    Plaintiff Hooper's and Tasin's Claims Are Improperly Venued. .................. 4

    A.    Legal Standard. ................................................................................. 4

    B.    Venue Is Plainly Improper as to Plaintiffs Hooper and Tasin. ............. 5

          i.    SDCI and SDC, LLC are not subject to personal
jurisdiction in this District regarding Plaintiffs
Hooper's and Tasin's claims. ...................................................... 5

                i.    SDCI and SDC, LLC are not "essentially at
home" in California, much less this District. ................... 6

                i.    Defendants did not intentionally direct suit-
related activity into this District pertaining to
Hooper and Tasin. ......................................................... 8

          ii.   No part of the events relating to Plaintiffs Hooper's
and Tasin's claims occurred in this District. ............................ 13

          iii.  Section 1391(b)(3) does not apply. ........................................... 13

    C.    Plaintiffs Hooper's and Tasin's Claims Should be
Transferred Pursuant to 28 U.S.C. § 1406(a). .................................. 14

II.   The Claims of Plaintiffs Lucas and Smith Should be Transferred
Pursuant to Section 1404(a). .................................................................. 17

    A.    Legal Standard Under Section 1404(A) .............................................. 17

    B.    This Case Could Have Been Brought in the Middle District
of Tennessee .................................................................................... 18

    C.    The Interests of Justice Strongly Favor Transferring This
Action. ............................................................................................. 18

    D.    The Convenience of the Parties and Witnesses and *Jones*
Factors Favor Transferring This Action to the Middle
District of Tennessee ........................................................................ 21

i

1

CONCLUSION....................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO DISMISS & TRANSFER

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abedi v. New Age Medical Clinic PA*,
No. 17-cv-1618, 2018 WL 3155618 (E.D. Cal. June 25, 2018) ....................... 11

*Abrams Shell v. Shell Oil Company*,
165 F. Supp. 2d 1096 (C.D. Cal. 2001) ............................................................. 5

*Alcatel Lucent USA, Inc. v. Dugdale Communications, Inc.*,
No. 09-cv-2140, 2010 WL 883831 (C.D. Cal. Mar. 5, 2010) ........................... 17

*Alere Medical, Inc. v. Health Hero Network*,
No. 07-cv-05054, 2007 WL 4351019 (N.D. Cal. Dec. 12, 2007)...................... 18

*Amiri v. DynCorp International, Inc.*,
No. 14-cv-03333, 2015 WL 166910 (N.D. Cal. Jan. 13, 2015)........................... 7

*Atayde v. Napa State Hospital*,
No. 16-cv-00038, 2016 WL 1089248 (N.D. Cal. Mar. 21, 2016)..................... 21

*Atlantic Marine Construction Company. v. United States District*
*Court for the Western District of Texas*,
571 U.S. 49 (2013) ..................................................................................... 13, 14

*Axiom Foods, Inc. v. Acerchem International, Inc.*,
874 F.3d 1064 (9th Cir. 2017)................................................................... 6, 8, 9

*Baglama v. MWV Consumer & Office Products*,
No. 12-cv-1209, 2013 WL 12200647 (C.D. Cal. Aug. 19, 2013)..................... 15

*Balasanyan v. Nordstrom, Inc.*,
No. 11-cv-05689, 2011 WL 5520051 (C.D. Cal. Nov. 9, 2011) ...................... 18

*Berman v. Modell*,
No. 13-cv-0565, 2013 WL 5703352 (E.D. Cal. Oct. 16, 2013)........................ 20

*Billing v. CSA-Credit Solutions of America, Inc.*,
No. 10-cv-0108, 2010 WL 2542275 (S.D. Cal. June 22, 2010).................. 15, 16

*Bristol-Myers Squibb Company v. Superior Court of California*,
   137 S. Ct. 1773 (2017) ................................................................. 12, 20

*Burnett v. Conseco Life Insurance Company*,
   No. 12-cv-01715, 2018 WL 4945523 (C.D. Cal. Jan. 24, 2018) ................ 20, 21

*Camarena v. Vanderbilt Mortgage & Finance, Inc.*,
   No. 15-cv-0656, 2015 WL 4036258 (N.D. Ill. July 1, 2015) ........................... 25

*Carpenter v. PetSmart, Inc.*,
   No. 19-cv-1731, 2020 WL 996947 (S.D. Cal. Mar. 2, 2020) ........................... 20

*Castillo v. Caesars Entertainment Corporation*,
   No. 18-cv-05781, 2018 WL 6199682 (N.D. Cal. Nov. 28, 2018) ..................... 10

*Cromwell v. Certified Forensic Loan Auditors*,
   No. 17-cv-02429, 2019 WL 1095837 (N.D. Cal. Jan. 10, 2019) ......................... 7

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................. 6, 7, 8

*Delta Dawgs Construction Corporation v. Servpro Industries, Inc.*,
   No. 18-cv-02907, 2018 WL 8731932 (C.D. Cal. Aug. 20, 2018) ..................... 19

*Fishman v. Subway Franchisee Advertising Fund Trust, Ltd.*,
   No. 19-cv-02444, 2019 WL 6135030 (C.D. Cal. Nov. 19, 2019) ....................... 8

*Glencore Grain Rotterdam v. Shivnath Rai Harnarain Company*,
   284 F.3d 1114 (9th Cir. 2002) ......................................................... 6

*Goff v. Nationwide Mutual Insurance Company*,
   No. 17-cv-7358, 2018 WL 6003578 (C.D. Cal. Apr. 5, 2018) ..................... 18, 20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915, 919 (2011) ............................................................. 6

*Griffith v. Boll & Branch, LLC*,
   No. 19-cv-1551, 2020 WL 532419 (S.D. Cal. Feb. 3, 2020) ........... 10, 11, 12, 13

*Hancock v. Jackson Hewitt Tax Service, Inc.*,
   No. 19-cv-2602, 2019 WL 8013111 (C.D. Cal. Aug. 29, 2019) ................ 23, 25

*Hastings v. Triumph Property Management Corporation*,
   No. 15-cv-312, 2015 WL 9008758 (S.D. Cal. Dec. 15, 2015) ......................... 11

iv

*Hawkins v. Gerber Products Company*,
  924 F. Supp. 2d 1208 (S.D. Cal. 2013) ....................................................... 18, 25

*IHS Concepts, Inc. v. BonWorth, Inc.*,
  No. 18-cv-01428, 2018 WL 3244496 (C.D. Cal. Apr. 17, 2018) ..................... 19

*Irving v. Lennar Corporation*,
  No. 12-cv-290, 2013 WL 1308712 (E.D. Cal. Apr. 1, 2013) ........................... 21

*James v. Orchard City Holdings, Inc.*,
  No. 19-cv-01885, 2019 WL 7945599 (C.D. Cal. Aug. 9, 2019) ...................... 22

*Johnson v. Relves*,
  No. 13-cv-0866, 2014 WL 1325388 (C.D. Cal. Feb. 10, 2014) ....................... 17

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) .................................................................. *passim*

*Kempton v. Life for Relief & Development Inc.*,
  No. 19-cv-02156, 2019 WL 5188750 (D. Ariz. Oct. 15, 2019) ........................ 23

*Kissick v. American Residential Services*,
  No. 19-cv-1460, 2019 WL 6434639 (C.D. Cal. July 18, 2019) ................. *passim*

*Labrecque v. NewRez LLC*,
  No. 19-cv-00465, 2020 WL 3276699 (D. Ariz. June 16, 2020) ....................... 20

*LaGuardia v. Designer Brands, Inc.*,
  No. 19-cv-1568, 2020 WL 2463385 (S.D. Cal. May 7, 2020) ................... *passim*

*Lambert v. Technology Resource Solutions*,
  No. 18-cv-1114, 2018 WL 5919211 (C.D. Cal. Aug. 22, 2018) ...................... 22

*Liang v. AWG Remarketing, Inc.*,
  No. 13-cv-1621, 2014 WL 12579653 (C.D. Cal. Jan. 27, 2014) ........... 15, 19, 24

*Los Angeles Beauty Supply, Inc. v. Diamond Beauty Supply, Inc.*,
  No. 10-cv-01953, 2010 WL 11579703 (C.D. Cal. June 30, 2010) ................... 14

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ....................................................................... 21

*Luna v. Shac, LLC*,
  No. 14-cv-00607, 2014 WL 3421514 (N.D. Cal. July 14, 2014) ..................... 11

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO DISMISS & TRANSFER

*Martensen v. Koch*,
No. 12-cv-05257 , 2013 WL 4734000 (N.D. Cal. Sept. 3, 2013) ............... 16, 19

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
647 F.3d 1218 (9th Cir. 2011) ...................................................................... 6, 7

*Mirza v. Central Asia Institute*,
No. 14-cv-01542, 2014 WL 12663437 (C.D. Cal. May 27, 2014) ................... 22

*Moser v. Health Insurance Innovations, Inc.*,
No. 17-cv-1127, 2018 WL 325112 (S.D. Cal. Jan. 5, 2018) ............................ 12

*Multistate Legal Studies, Inc. v. Marino*,
No. 96-cv-5118, 1996 WL 786124 (C.D. Cal. Nov. 4, 1996) .......................... 19

*Murphy v. Schneider National, Inc.*,
362 F.3d 1133 (9th Cir. 2004) ......................................................................... 5

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) ....................................................................... 13

*Natkin v. American Osteopathic Association*,
No. 15-cv-08346, 2016 WL 7486597 (C.D. Cal. July 22, 2016) ..................... 23

*Neology, Inc. v. Federal Signal Corporation*,
No. 12-cv-04422, 2012 WL 13013024 (C.D. Cal. Oct. 15, 2012) ................... 19

*In re Nissan North America, Inc. Litigation*,
No. 18-cv-07292, 2019 WL 4601557 (N.D. Cal. Sept. 23, 2019) .............. 13, 16

*Omnicell, Inc. v. Medacist Solutions Group, LLC*,
272 F.R.D. 469 (N.D. Cal. 2011) ................................................................... 14

*Panetta v. SAP America, Inc.*,
No. 05-cv-01696, 2005 WL 1774327 (N.D. Cal. July 26, 2005) ....................... 4

*Perry v. Jabiru Aircraft Pty. Ltd.*,
No. 17-cv-8356, 2018 WL 6321643 (C.D. Cal. Aug. 3, 2018) .................... 6, 12

*Pickard v. Department of Justice*,
No. 10-cv-05253, 2011 WL 2199297 (N.D. Cal. June 7, 2011) ........................ 5

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) .................................................................. 11, 12

vi

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ........................................................................ 6, 7

*Riva v. Pepsico, Inc.*,
   No. 14-cv-340, 2014 WL 1729023 (S.D. Cal. Apr. 30, 2014) ........................... 23

*Schwarzenegger v. Fred Martin Motor Company*,
   374 F.3d 797 (9th Cir. 2004) ............................................................................. 9

*Shapiro v. Gulf Stream Coach Inc.*,
   No. 09-cv-00789, 2009 WL 10670410 (C.D. Cal. July 9, 2009) ....................... 14

*Signal IP, Inc. v. Ford Motor Company*,
   No. 14-cv-03106, 2014 WL 4783537 (C.D. Cal. Sept. 25, 2014) ..................... 24

*Simonoff v. Kaplan, Inc.*,
   No. 09-cv-5017, 2010 WL 1195855 (N.D. Ill. Mar. 17, 2010) ........................... 25

*SoccerSpecific.com v. World Class Coaching, Inc.*,
   No. 08-cv-6109, 2008 WL 4960232 (D.Or. Nov. 18, 2008) .............................. 20

*Stock v. Xerox Corporation*,
   No. 15-cv-01747, 2016 WL 5867436 (C.D. Cal. Apr. 13, 2016) ...................... 22

*Sung v. Bussio*,
   No. 13-cv-01786, 2013 WL 6086030 (N.D. Cal. Nov. 19, 2013) ..................... 13

*Volks USA Inc. v. A2 Hosting, Inc.*,
   No. 16-cv-4277, 2016 WL 6808113 (C.D. Cal. Nov. 16, 2016) .......................... 4

*Walden v. Fiore*,
   571 U.S. 277 (2014) ..................................................................................... 8, 12

*Wenokur v. AXA Equitable Life Insurance Company*,
   No. 17-cv-00165, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017) .......................... 20

*Widjaja v. YUM! Brands*,
   No. 09-cv-0502, 2009 WL 10673334 (C.D. Cal. June 8, 2009) ....................... 21

*Zumba Fitness, LLC v. Brage*,
   No. 11-cv-5361, 2011 WL 4732812 (C.D. Cal. Oct. 6, 2011) .......................... 15

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO DISMISS & TRANSFER

**Statutes & Rules**

28 U.S.C. § 123 ................................................................................ 18

28 U.S.C. § 1391 ......................................................................... *passim*

28 U.S.C. § 1404 ......................................................................... *passim*

28 U.S.C. § 1406 ......................................................................... *passim*

28 U.S.C. § 1631 ............................................................................... 14

Federal Rule of Civil Procedure 45 ................................................. 23

Federal Rule of Civil Procedure 21 ............................................ 1, 17

**Other Authorities**

Virginia A. Phillips & Karen L. Stevenson, *Federal Civil Procedure
    Before Trial, California and Ninth Circuit Editions*, § 4:577 ........................... 15

Virginia A. Phillips & Karen L. Stevenson, *Federal Civil Procedure
    Before Trial, California and Ninth Circuit Editions*, § 4:733 ........................... 24

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO DISMISS & TRANSFER

# **INTRODUCTION**[1]

Plaintiffs' counsel is committed to bringing a TCPA class action in the Central District of California despite this case having little connection to this District.  Prior to this case, Plaintiffs' counsel initiated the first action, *Philip v. SmileDirectClub, Inc.*, No. 20-cv-01111 (C.D. Cal.).  Personal jurisdiction was lacking in that case and—just prior to a ruling on the fully briefed Motion to Dismiss Pursuant to Rule 12(b)(2) and Alternative Motion to Transfer—Plaintiffs' counsel voluntarily dismissed the case *without* prejudice and instead filed the instant litigation on behalf of four named plaintiffs, two of whom have no connection to this District.

The effort to remain in this District fails.  Not only does this matter have little to do with this District, but Plaintiffs Hooper and Tasin reside in Northern California.  Neither allege injury in this District or any relevant connection to this District.  Defendant SmileDirectClub, Inc. ("SDCI") is a Delaware corporation headquartered in Nashville, Tennessee.  Defendant SmileDirectClub, LLC ("SDC, LLC") is a Tennessee limited liability company based in Nashville, Tennessee.  Venue in this District is thus plainly lacking as to Plaintiffs Hooper and Tasin under 28 U.S.C. § 1391(b).  Neither Defendant resides in this District, nor did *any* part (much less a *substantial* part) of the events at issue with respect to their claims occur in this District.  Plaintiffs decline to so much as provide a basis for filing in this District.

Though venue is proper as to Plaintiffs Lucas and Smith, venue must be established as to *each named plaintiff*.  As a result, pursuant to 28 U.S.C. § 1406(a), this Court should sever (under Rule 21) and transfer Plaintiffs Lucas's and Tasin's claims to the Middle District of Tennessee, the only venue that would be proper as to the four named plaintiffs such that this matter can proceed as a single case.

Likewise, pursuant to 28 U.S.C. § 1404(a), the claims of Plaintiffs Lucas and Smith should be transferred to the Middle District of Tennessee.  Transfer is prudent

---

[1]    Simultaneously herewith, Defendants have filed a motion to compel arbitration.  Defendants believe this motion should be evaluated first.

here where it will ensure that the case proceeds as a single, properly venued action. Further, the convenience of the parties and witnesses and the situs of material events heavily favor transfer. Myriad TCPA class cases in this District are transferred to defendants' home forum—the situs of material events and location of the pertinent documents and witnesses. Plaintiffs' decision to bring a nationwide class case in a forum with little connection to the underlying facts is entitled to little deference.

## BACKGROUND

### I.    The Complaint.

All four Plaintiffs allege they received unsolicited text messages on their cell phones. (Dkt. 1 ¶¶ 8-19.) Plaintiffs contend the messages they received pertained to Defendants' "products and services." (*Id*.) Plaintiffs each assert one TCPA claim and seek to represent a nationwide class of all persons who received a marketing message from Defendants without their consent in the last four years. (*Id.*, ¶ 28.)

### II.   Plaintiffs Hooper's and Tasin's SmileDirectClub Accounts.

On June 19, 2018, Plaintiff Hooper created a SmileDirectClub account online and scheduled an appointment at a retail location known as a SmileShop. (*See* Declaration of Justin Skinner ["Skinner Decl."] ¶ 4, attached as Exhibit A.) In creating his account, Plaintiff Hooper provided a contact address in Berkeley, California. (*Id.*) The SmileShop he visited was in Oakland, California. (*Id.*)

On December 7, 2019, Plaintiff Tasin created a SmileDirectClub account online and scheduled an appointment at a SmileShop. (*Id.* ¶ 5.) In creating his account, Plaintiff Tasin provided a contact address in Redwood City, California. (*Id.*) The SmileShop he visited was in Redwood City, California. (*Id.*)

Plaintiffs Hooper and Tasin visited SmileShops in Northern California, where each provided dental and health histories, as well as their chief complaint, had photos taken of their teeth and gums using a traditional and a sophisticated camera and learned about the teledentistry platform that SDC, LLC provides for the provision of clear aligner therapy by state-licensed dentists and orthodontists to their patients.

(*Id*. ¶ 6.)   Their information and draft treatment plans were sent to a dentist or orthodontist licensed in their state of residence for assessment, diagnosis and, if appropriate, treatment.  (*Id*.)  Their aligner treatment plans were thereafter approved by their respective treating dentist or orthodontist.  (*Id*.)

## III.    Background Regarding SDCI & SDC, LLC and the Messages at Issue.

Through its direct and indirect subsidiaries, SDCI is the industry pioneer and first direct-to-consumer medtech teeth straightening platform.  (Declaration of Kyle Wailes ['Wailes Decl."] ¶ 6, attached as <u>Exhibit B</u>.)  SDCI is a Delaware corporation headquartered in Nashville, Tennessee.  (*Id*. ¶ 4.)  SDCI is a holding company with no offices or employees.  (*Id*. ¶¶ 6, 7.)  SDC, LLC was formed in Tennessee and is headquartered in Nashville.  (*Id*. ¶ 5.)  SDC, LLC has no offices in California and has only a handful of employees (less than 1%) in California who work from home.  (*Id*. ¶ 9.)   Though there are SmileShops in California where consumers provide dental and health histories, as well as their chief complaint and have photos taken of their teeth and gums using a traditional and a sophisticated camera, those locations are not owned by SDCI or SDC, LLC.  (*Id*. ¶ 8.)  They are owned and operated by a professional dental practice that entered into a suite of agreements for SDC, LLC to provide its dental support organization services, including a licensing agreement, with a subsidiary of SDCI, for the licensing of SDC, LLC's intellectual property.  (*Id*.)  The persons working at those locations are not directly or indirectly employed by SDCI or SDC, LLC and have no input or control over the texting at issue.  (*Id*.)

The persons that create and oversee the text program at issue are employed by SDC, LLC.  (*Id*. ¶ 10.)  These persons, except for one remote employee in Vermont, are in Nashville.  (*Id*. ¶ 11.)  All decisions regarding to whom to send messages, when and what to send are made and approved in Nashville.  (*Id*. ¶ 13.)  The texts originate in Nashville.  (*Id*. ¶ 14.)  All relevant document custodians, except for the employee in Vermont, are in Nashville.  (*Id*. ¶ 15.)  The key witnesses and custodians in Nashville include John Sheldon (CMO), Justin Skinner (CTO) and Jessica Cicurel

1  (Global Head of Customer Experience).  (*Id.* ¶ 17.)[2]

2       SDC, LLC uses a web-based platform built by non-party Twilio, Inc. to send

3  the texts at issue.  (*See* Skinner Decl. ¶ 7.)  Twilio plays no role in drafting the

4  messages or determining to whom or when messages are sent.  (*Id.* ¶ 9.)  Twilio

5  provides a passive web portal through which messages are passed to mobile carriers

6  and transmitted.  (*Id.*)  Twilio's physical location is irrelevant.  (*Id.* ¶ 11.) The

7  messages sent by SDC, LLC pass through servers on their way to the mobile carriers.

8  (*Id.*)  The servers are likely in multiple states, and the messages pass ephemerally

9  through the servers on their way to carriers and customers. (*Id.* ¶¶ 11, 12.)

10                              **DISCUSSION**

11 **I.    Plaintiff Hooper's and Tasin's Claims Are Improperly Venued.**

12       **A.    Legal Standard.**

13       The federal venue statute provides for venue in three forums: (i) the district in

14 which the defendant resides, (ii) the district in which the events at issue arose and

15 (iii) if no other district is available, any district in which the defendant is subject to

16 personal jurisdiction with respect to the suit.  *See* 28 U.S.C § 1391(b).

17       A corporate defendant is deemed to reside "in any judicial district in which

18 such defendant is subject to the court's personal jurisdiction with respect to the civil

19 action in question."  *Id.* § 1391(c).  Where a state has multiple judicial districts, "a

20 corporation is deemed to reside in any district within the state with which its contacts

21 would be sufficient to subject it to personal jurisdiction if the district were a separate

22 state."  *Panetta v. SAP Am., Inc.*, No. C0501696RMW, 2005 WL 1774327, at *2

23 (N.D. Cal. July 26, 2005); *see also* 28 U.S.C. § 1391(d); *Volks USA Inc. v. A2*

24 *Hosting, Inc.*, No. CV16-4277-CAS(EX), 2016 WL 6808113, at *4 (C.D. Cal. Nov.

25 16, 2016) ("A corporation resides, for purposes of venue, in any district in which it

26 would be subject to the court's personal jurisdiction if said district were a state.").

27 _____
   [2]    For the sake of transparency, the relevant SDC, LLC employees in Nashville
28 are working remotely during the COVID-19 pandemic.  Once it is safe to do so,
   these employees will be returning to the Nashville office.  (Wailes Decl. ¶ 16.)

1   Once a 12(b)(3) challenge is made, "the plaintiff has the burden to show that

2   venue is proper." *Pickard v. Dep't of Justice*, No. 10-05253 LB, 2011 WL 2199297,

3   at *2 (N.D. Cal. June 7, 2011). In evaluating a 12(b)(3) motion, "the pleadings need

4   not be accepted as true . . . and the court may consider facts outside of the pleadings."

5   *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). Courts have

6   discretion to transfer to fix venue, rather than dismiss. *See* 28 U.S.C. § 1406(a).

7   **B.    Venue Is Plainly Improper as to Plaintiffs Hooper and Tasin.**

8   At the outset, "[t]he rule in a proposed class action is that each named plaintiff

9   must independently establish venue." *LaGuardia v. Designer Brands, Inc.*, No.

10  19CV1568 JM(BLM), 2020 WL 2463385, at *3 (S.D. Cal. May 7, 2020) (internal

11  quotations & citation omitted); *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096,

12  1107 n.5 (C.D. Cal. 2001) ("Notwithstanding the relaxation of venue and personal

13  jurisdiction requirements as to *unnamed* members of a plaintiff class, it is by now

14  well settled that these requirements to suit must be satisfied for *each and every*

15  *named plaintiff* for the suit to go forward.") (emphasis in original).

16  Plaintiffs do not distinguish between themselves in making venue allegations.

17  (*See* Dkt. 1 ¶ 3.) Plaintiffs coyly allege *some* of them live in this District and *some*

18  received messages in this District. (*Id*) Plaintiffs also allege venue is proper because

19  Defendants sent the messages at issue using the software of non-party Twilio, which

20  is located in *San Francisco*. (*Id.*) Despite Plaintiffs' failure to make specific venue

21  allegations, Defendants will evaluate each Section 1391(b) prong here.

22      *i.    SDCI or SDC, LLC are not subject to personal jurisdiction in*

23          *this District regarding Plaintiffs Hooper's and Tasin's claims.*

24  Further to 28 U.S.C. § 1391(b)(1), venue is proper in the district where a

25  defendant resides "if all defendants are residents of the State in which the district is

26  located." 28 U.S.C. § 1391(b)(1). "Residence" for purposes of a defendant business

27  is where the entity is subject to the court's personal jurisdiction. *See id.* § 1391(c)(2).

28  And, where a state has multiple jurisdictions, each district is treated as its own state.

1  *See id.* § 1391(d).  Plaintiffs must thus establish that, as it relates to Plaintiffs

2  Hooper's and Tasin's claims, *both* SDCI and SDC, LLC "reside" in California and

3  at least one specifically "resides" in this District.  Neither is possible.

4      The TCPA does not provide for nationwide service, and so this Court must

5  look to California's long arm statute to assess jurisdiction.  *See Axiom Foods, Inc. v.*

6  *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017).  California allows personal

7  jurisdiction co-extensive with federal due process.  *Id*.  The personal jurisdiction

8  analysis thus collapses and courts "consider only whether the exercise of jurisdiction

9  over [Defendants] comports with due process."  *Glencore Grain Rotterdam v.*

10  *Shivnath Rai Harnarain Co*., 284 F.3d 1114, 1123 (9th Cir. 2002).  There are two

11  types of personal jurisdiction under the due process clause—general and specific

12  jurisdiction.  *See, e.g.*, *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015).

13      ### a.    SDCI and SDC, LLC are not "essentially at home" in

14      ### California, much less this District.

15      As the Ninth Circuit recently stated, "[t]he standard for general jurisdiction is

16  an exacting standard, as it should be, because a finding of general jurisdiction

17  permits a defendant to be haled into court in the forum state to answer for any of its

18  activities anywhere in the world."  *Mavrix Photo, Inc. v. Brand Tech., Inc*., 647 F.3d

19  1218, 1224 (9th Cir. 2011) (internal quotations & citation omitted).  Mere

20  "continuous and systematic" contacts are insufficient.  *See, e.g.*, *Daimler v. Bauman*,

21  571 U.S. 117, 138-39 (2014).  General jurisdiction is only available where the party's

22  "affiliations with the State are so 'continuous and systematic' as to render them

23  essentially at home in the forum State."  *Goodyear,* 564 U.S. at 919; *see also Perry*

24  *v. Jabiru Aircraft Pty. Ltd*., No. 178356VAPFFMX, 2018 WL 6321643, at *3 (C.D.

25  Cal. Aug. 3, 2018) ("General jurisdiction for a corporate defendant typically arises

26  when it is incorporated or has its principal place of business in the forum state.")

27      The Supreme Court and the Ninth Circuit find general jurisdiction only in

28  forums that act as the non-resident defendant's home.  *See, e.g.*, *Mavrix Photo*, 647

6

F.3d at 1224.  To that end, "outside a corporation's place of incorporation or principal place of business [general jurisdiction] is rarely satisfied." *Amiri v. DynCorp Int'l, Inc*., No. 14-03333, 2015 WL 166910, at *2 (N.D. Cal. Jan. 13, 2015).  "Essentially at home" means contacts must be such that the entity is acting "comparable to a domestic enterprise in that State." *Daimler*, 571 U.S. at 133 n.11; *id.* at 761.

Plaintiffs do not colorably assert general jurisdiction.  Nevertheless, it bears repeating SDCI is Delaware corporation headquartered in Nashville, Tennessee. (*See* Wailes Decl. ¶ 4.)  SDC, LLC is a Tennessee LLC based in Nashville.  (*Id.* ¶ 5.) Plaintiffs cannot assert general jurisdiction using the "paradigmatic locations where general jurisdiction is appropriate over a" business  *Ranza*, 793 F.3d at 1069; *Daimler*, 571 U.S. at 139 (refusing to find jurisdiction where a subsidiary—an LLC —was neither formed in nor based in California); *Cromwell v. Certified Forensic Loan Auditors*, No. 17-02429-DMR, 2019 WL 1095837, at *8 (N.D. Cal. Jan. 10, 2019) *R&R adopted*, 2019 WL 2181969 (N.D. Cal. Feb. 12, 2019) ("The test for personal jurisdiction over a LLC is the same as for other corporations.").

For general jurisdiction, Plaintiffs would have to show "this is the kind of 'exceptional case' in which Defendants' operations in California are 'so substantial and of such a nature as to render [Defendants] at home in' California." *Amiri*, 2015 WL 166910 at *3 (internal citation omitted).  Plaintiffs cannot meet this "exacting standard." *Ranza*, 793 F.3d at 1069.  None of Plaintiffs' allegations suggest SDCI or SDC, LLC are "essentially at home" in California.  To the extent Plaintiffs claim Defendants have "over 300 brick-and-mortar retail locations" in the United States, (Dkt 1 ¶ 5), they fail to meet the general jurisdiction threshold.  Though there are "SmileShops" in California where consumers can have certain information gathered for review by a dentist or orthodontist licensed to treat patients in the state, those shops are not owned or operated by SDCI or SDC, LLC.  (Wailes Decl. ¶ 8.)

Even if these California shops were to be somehow attributed to SDCI or SDC, LLC, it would not change the outcome.  The Supreme Court specifically

referred to such a doing-business-test as "unacceptably grasping" and made clear that "[a] corporation that operates in many places can scarcely be deemed at home in all of them.  Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Daimler*, 571 U.S. at 139, 139 n.20.  Looking to *Daimler*, the Supreme Court found the operation of an office and facilities and significant sales in a state by a subsidiary did not provide general jurisdiction.  *Id.* at 122-25; *see also Fishman v. Subway Franchisee Advert. Fund Tr., Ltd*., No. 19CV02444ODWASX, 2019 WL 6135030, at *3 (C.D. Cal. Nov. 19, 2019) (finding Subway locations in Los Angeles "insufficient to establish that Subway has any systematic or continuous affiliation with California.").

Plaintiffs Hooper and Tasin cannot meet the exacting standard for general jurisdiction.  Neither SDCI nor SDC, LLC are "essentially at home" in California.

### b.    Defendants did not intentionally direct suit-related activity into this District pertaining to Hooper and Tasin.

Specific jurisdiction exists where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  It is the defendant that must make the contacts with the forum; "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."  *Id.* at 285-86 (noting also that "'random, fortuitous, or attenuated' contacts" are insufficient. *Id.* (internal citation omitted).

The Ninth Circuit uses a three-factor test for assessing specific jurisdiction:

(1) the defendant must either purposefully direct his activities toward the forum or purposefully avail[ ] himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Axiom*, 874 F.3d at 1068 (internal quotations and citation omitted).

8

In claims sounding in tort, courts turn to the "purposeful direction" analysis. *See id.*, 874 F.3d at 1068; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The purposeful direction analysis hinges on three factors: "[t]he defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom*, 874 F.3d at 1069 (internal quotations and citation omitted).

Plaintiffs Hooper and Tasin cannot satisfy the second or third elements of the purposeful direction test, treating the Central District of California as its own state. Plaintiffs collectively allege that personal jurisdiction exists because (i) *some* of the four plaintiffs reside in this District, (ii) *some* of the four plaintiffs received messages in this District and (iii) Defendants used Twilio software to send the messages at issue. (Dkt. 1 ¶ 3.) None of these allegations help Plaintiffs Hooper and Tasin.

<u>First</u>, in creating their accounts, Plaintiff Hooper listed an address in Berkeley, California and Plaintiff Tasin listed an address in Redwood City, California—both in the Northern District of California. (Skinner Decl. ¶¶ 4, 5.) Neither apparently received messages in this District, as Plaintiffs' coy jurisdictional allegation seems to concede. (Dkt. 1 ¶ 3.) Further, both Plaintiffs visited SmileShop locations in Northern California. (Skinner Decl. ¶¶ 4-6.) It would be impossible for Defendants to have expressly aimed into this District any act relevant to Plaintiffs Hooper and Tasin knowing it would harm them in this District when the only information known about either identified them as residents of the Northern District of California.

<u>Second</u>, the use of software developed by Twilio further undercuts Plaintiffs' venue. Plaintiffs claim that the messages at issue "originated" from Twilio's headquarters in San Francisco using technology located in San Francisco. (Dkt. 1 ¶ 3.) Accepting these allegations as true for purposes of the venue analysis, they *belie* any notion that venue is proper as to Plaintiffs Hooper and Tasin in this District.[3]

---

[3] As detailed below in the 1404(a) transfer analysis, Plaintiffs grossly overstate Twilio's role. Twilio provides a web-based portal through which messages can be sent. (Skinner Decl. ¶¶ 9-12.) Each of the messages at issue originates in Nashville

Treating the Central District of California as its own state, these allegations at best are relevant to specific jurisdiction in *the Northern District of California*. The location of Twilio's headquarters or its software/hardware in Northern California certainly do not constitute a relevant contact with the Central District of California.

Two recent TCPA cases highlight the inappropriateness of venue in this District as it relates to Plaintiffs Hooper and Tasin. In *Griffith v. Boll & Branch*, a Southern District of California court evaluated a venue challenge in a TCPA action alleging the receipt of unsolicited text messages. *See* No. 19-cv-1551 JM (LL), 2020 WL 532419, at *4 (S.D. Cal. Feb. 3, 2020). In *Griffith*, the plaintiff had a 619 area code number (corresponding to the Southern District of California), but received the texts at issue in the *Central District*. *See id.* at *6 ("Plaintiff admits she resides in the Central District of California (Riverside County) and Plaintiff is not claiming that she was in this district when she made the call to Defendant's customer service line or when she received the text messages from Defendant. Nor does Plaintiff claim the text messages were transmitted through this district."). The Court thus held the plaintiff failed to establish personal jurisdiction over the out-of-state defendant in the Southern District and dismissed the case for improper venue. *Id.* at *6.

In *LaGuardia v. Designer Brands*, another Southern District of California court evaluated a venue motion in a TCPA case. *See* No. 19-1568 JM(BLM), 2020 WL 2463385, at *2 (S.D. Cal. May 7, 2020). In *LaGuardia*, one named plaintiff resided in the Southern District, while the other three resided in the Central and Northern Districts of California. *Id.* The Court noted at the outset that each named plaintiff independently needed to establish venue. *Id.* at *5. The three non-resident

and is drafted by SDC, LLC and sent to recipients selected by SDC, LLC. (*Id.* ¶ 13.) Twilio plays no role in drafting messages or selecting recipients or timing. (*Id.* ¶ 9.) Twilio's location is irrelevant to this case; the messages merely pass through Twilio's servers (which are not necessarily in California). (*Id.* ¶ 11.) Twilio does not provide any material assistance; it is a web-based tunnel to the mobile carriers. (*Id.* ¶ 9.) Nor would the location of Twilio suffice to establish specific jurisdiction in any event. *See Castillo v. Caesars Entm't Corp.*, No. 18-05781-EMC, 2018 WL 6199682, at *4 (N.D. Cal. Nov. 28, 2018) (rejecting the notion that the location of a non-party SMS platform's developer did not confer personal jurisdiction).

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO DISMISS & TRANSFER

1    plaintiffs "ha[d] not tied their claims to any forum-related act or transaction on the
2    part of Defendants." *Id.* The Court thus concluded that the defendants did not reside
3    in the Southern District as it related to the claims of the non-resident plaintiffs. *Id.*

4    Plaintiffs' alleged "purposeful direction" is undercut by the facts at hand that
5    no relevant conduct could have been aimed at the Central District as to Plaintiffs
6    Hooper and Tasin, with any knowledge an injury could occur there. Express aiming
7    requires asking whether the conduct at issue was expressly aimed at the forum. *See*
8    *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). Far from "expressly aiming"
9    at this forum, Plaintiffs Hooper and Tasin have no relevant connection to this forum
10   and Defendants made no contact with this forum relevant to the claims asserted by
11   Plaintiffs Hooper and Tasin. The messages allegedly received by Plaintiffs Hooper
12   and Tasin were apparently not received in this District, were not sent through this
13   District and did not originate in this District. *See Griffith*, 2020 WL 532419, at *5.

14   The jurisdictional argument is particularly weak for Plaintiff Tasin, who has a
15   Bay Area 650 area code. (Dkt. 1 ¶ 13.) In addition to residing in Northern California
16   and failing to allege the receipt of any messages in this District, numerous courts in
17   this Circuit have found personal jurisdiction lacking in TCPA cases where the
18   plaintiff's area code is located out of state. *See, e.g.*, *Hastings v. Triumph*, No. 15-
19   cv-312, 2015 WL 9008758, at *2 (S.D. Cal. Dec. 15, 2015) (finding jurisdiction
20   lacking where "[t]he only known information Triumph had about [plaintiffs]—their
21   phone number—identified them as possible Arizona residents, not California
22   residents."); *Abedi v. New Age Med. Clinic PA*, No. 17-1618 AWI SKO, 2018 WL
23   3155618, at *5 (E.D. Cal. June 25, 2018) (dismissing case where the phone number
24   was a non-California number); *Luna v. Shac*, No. 14-00607, 2014 WL 3421514, at
25   *3 (N.D. Cal. July 14, 2014) (finding express aiming where the messages were sent
26   to California area codes); *Moser v. Health Ins. Innovations, Inc.*, No. 17-cv-1127,
27   2018 WL 325112, at *4 (S.D. Cal. Jan. 5, 2018) ("[D]efendant violated the TCPA by
28   calling a phone number with a forum state area code.") (collecting cases).

1    Though Plaintiff Hooper may point out he has a forum area code (626), this

2  alone does not create jurisdiction.  First, the address Plaintiff Hooper provided and

3  the SmileShop location he visited evidence he resided in Northern California.  (*See*

4  Skinner Decl. ¶ 4.)  Second, and as the Court in *Griffith* noted, a forum area code is

5  not alone sufficient in the venue context where the plaintiff resides and received the

6  messages at issue elsewhere.  *See Griffith*, 2020 WL 532419, at *5 ("The only

7  connection between this district and the instant case consists of Defendant's text

8  messages to a (619) area code.  This, standing alone, is insufficient for venue.").

9  Here, like in *Griffith*, Plaintiff Hooper's only connection to this forum is his area

10  code, but he fails to allege a relevant contact between *Defendants* and *this forum* as

11  it relates to his claim.  *See id.*; *Walden*, 571 U.S. at 284 ("[T]he defendant's suit-

12  related conduct must create a substantial connection with the forum State.").

13    As a final matter, to the extent Plaintiffs claim the operation of SmileShops in

14  California or this District (which are not owned or operated by SDCI or SDC, LLC,

15  *see* Wailes Decl. ¶ 8) give rise to specific jurisdiction, such an argument cannot

16  prevail.  To satisfy specific jurisdiction, the suit must arise out of defendant's forum

17  contacts.  *See, e.g.*, *Bristol-Myers Squibb Co. v. Superior Court of California*, 137

18  S. Ct. 1773, 1780 (2017).  The "connection between the forum and the specific

19  claims at issue" is necessary; "the extent of a defendant's unconnected activities in

20  the state" do not matter.  *Id.* at 1781; *Picot*, 780 F.3d at 1215 n.3 ("A plaintiff may

21  not create personal jurisdiction over one claim by arguing that jurisdiction might be

22  proper over a different, hypothetical claim not before the court."); *Perry*, 2018 WL

23  6321643, at *4 (Phillips, J.).  Plaintiffs' claims stem from text messages, not

24  SmileShop locations.  Neither the shops nor persons working at the shops have

25  anything to do with sending the messaging at issue.  (*See* Wailes Decl. ¶ 8.)

26    Plaintiffs Hooper and Tasin thus cannot establish venue is proper over their

27  claims in the Central District under 28 U.S.C. § 1391(b)(1).

28

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO DISMISS & TRANSFER

1

2

         **ii.**     ***No part of the events relating to Plaintiffs Hooper's and Tasin's***
                ***claims occurred in this District.***

3           Pursuant to 28 U.S.C. § 1391(b)(2), venue also properly lies where "a

4  substantial part of the events or omissions giving rise to the claim occurred . . . ." 28

5  U.S.C. 1391(b)(2). The Ninth Circuit instructs that, in tort cases, "the locus of the

6  injury [is] the relevant factor" under Section 1391(b)(2). *See Myers v. Bennett Law*

7  *Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001); *Sung v. Bussio*, No. 13-01786-RMW,

8  2013 WL 6086030, at *4 (N.D. Cal. Nov. 19, 2013) ("In tort and tort-like actions,

9  the location where the plaintiff felt the injury is generally a proper venue.").

10         No event pertaining to Plaintiffs Hooper's and Tasin's claims took place in

11  this forum. Neither alleged suffering any injury here. (*See* Dkt. 1 ¶ 3 [alleging

12  vaguely that *some* of the Plaintiffs received the messages at issue in this District].)

13  Even giving Plaintiffs the benefit of the doubt, they allege that the messages at issue

14  "originated" in San Francisco. (*Id.* ¶ 3.) The messages in fact originated in

15  Nashville, Tennessee, (Skinner Decl. ¶ 13), but nevertheless by their own allegations

16  no part of their claims occurred in this District. *See, e.g.*, *Griffith*, 2020 WL 532419,

17  at *5 (noting the plaintiff did not contend she received messages in this district or

18  that they originated from this district). Venue cannot lie under Section 1391(b)(2).

19              **iii.**     ***Section 1391(b)(3) does not apply.***

20         Finally, the venue statute has a "catch all" where there is no jurisdiction

21  meeting the bill for Sections 1391(b)(1) or (b)(2). *See* 28 U.S.C. § 1391(b)(3). This

22  provision does not apply where there is another proper venue. *See, e.g.*, *Atl. Marine*

23  *Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56–57 (2013)

24  (noting the third subsection applies "[i]f no other venue is proper . . . .");*Griffith*,

25  2020 WL 532419, at *6; *In re Nissan N. Am., Inc. Litig.*, No. 18-07292-HSG, 2019

26  WL 4601557, at *6 (N.D. Cal. Sept. 23, 2019). Venue would unquestionably lie in

27  the Middle District of Tennessee, where both Defendants reside. (Wailes Decl. ¶¶ 4,

28  5.) This is, in fact, the only venue that would be proper for all four Plaintiffs.

1
2

**C.      Plaintiffs Hooper's and Tasin's Claims Should be Transferred Pursuant to 28 U.S.C. § 1406(a).**

3        Pursuant to 28 U.S.C. § 1406(a), where venue is improper, this Court can
4   transfer venue "in the interest of justice" to a district where the case "could have
5   been brought."  28 U.S.C. § 1406(a); *see also Atl. Marine Const.*, 571 U.S. at 55;
6   *Omnicell, Inc. v. Medacist Sols. Grp., LLC*, 272 F.R.D. 469, 472–73 (N.D. Cal. 2011)
7   (noting the decision to dismiss or transfer "is a matter within the sound discretion of
8   the district court.").  Venue here is unquestionably improper for Plaintiffs Hooper
9   and Tasin.  Transfer to the Middle District of Tennessee would be prudent.

10        As a predicate matter, and as noted above, this case could have been filed in
11   the Middle District of Tennessee.  Both Defendants are headquartered in Tennessee
12   and thus reside there and are subject to personal jurisdiction there.  *See* 28 U.S.C. §
13   1391(b).  *See, e.g., Los Angeles Beauty Supply, Inc. v. Diamond Beauty Supply, Inc.*,
14   No. CV1001953RGKFFMX, 2010 WL 11579703, at *3 (C.D. Cal. June 30, 2010).

15        Under Section 1406(a), transfer is appropriate if in the "interests of justice" to
16   do so.  *See* 28 U.S.C. § 1406(a).  Some courts—including this Court—have looked
17   to the Ninth Circuit's interpretation of 28 U.S.C. § 1631 that "'[n]ormally transfer
18   will be in the interest of justice because normally [sic] dismissal of an action that
19   could have been brought elsewhere is time-consuming and justice-defeating.'"
20   *Shapiro v. Gulf Stream Coach Inc.*, No. 09-00789VAPCWX, 2009 WL 10670410, at
21   *4 (C.D. Cal. July 9, 2009) (Phillips, J.) (quoting *Miller v. Hambrick*, 905 F.2d 259,
22   262 (9th Cir. 1990)); *LaGuardia*, 2020 WL 2463385, at *5 ("[N]ormally transfer will
23   be in the interest of justice because normally dismissal of an action that could be
24   brought elsewhere is time-consuming and justice-defeating.") (quoting *Amity
25   Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015)).
26   Other courts look to the factors outlined in *Jones v. GNC Franchising* (though *Jones*
27   interpreted Section 1404(a)) in evaluating the interests of justice.  *See, e.g., Billing
28   v. CSA-Credit Sols. of Am., Inc.*, No. 10-0108 BEN (NLS), 2010 WL 2542275, at *5

14

1    (S.D. Cal. June 22, 2010) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499

2    (9th Cir. 2000)); *Zumba Fitness, LLC v. Brage*, No. 11-5361-GHK CWX, 2011 WL

3    4732812, at *6 (C.D. Cal. Oct. 6, 2011) ("Factors relevant to the 'interest of justice'

4    determination under § 1406(a) are the same as those applicable to § 1404(a).").  And

5    others have commented that the *Jones* factors are more appropriate to 1404(a), and

6    instead look to "interests of justice" as encompassing consideration of the "efficient

7    administration of the court system . . . ."  *Baglama v. MWV Consumer & Office*

8    *Prod.*, No. 12-1209FMOJPRX, 2013 WL 12200647, at *7 (C.D. Cal. Aug. 19, 2013)

9    (internal quotations and citation omitted); *LaGuardia*, 2020 WL 2463385, at *5.

10       Defendants here focus on judicial economy.[4]  *See also* Virginia A. Phillips &

11   Karen L. Stevenson, *Rutter Group Practice Guide: Federal Civil Procedure Before*

12   *Trial, California and Ninth Circuit Editions*, § 4:577 ("Normally, if there is another

13   district or division in which the action could have been brought, transfer is preferred

14   to the harsh remedy of dismissal.").  Transfer is appropriate under Section 1406(a)

15   because it is the only venue that would be proper as to all Plaintiffs in this case.  The

16   alternative, for example transferring Plaintiffs' Hooper's and Tasin's claims to the

17   Northern District of California, would be the antithesis of judicial economy.[5]  This

18   would create two separate actions, seeking to certify the identical putative class.

19       Avoiding venue problems and consolidating cases favors transfer.  *See Liang*

20   *v. AWG Remarketing, Inc.*, No. 13-1621CJCANX, 2014 WL 12579653, at *2 (C.D.

21   Cal. Jan. 27, 2014) ("[T]here are substantial questions as to . . . whether venue is

22   proper in the Central District of California," and transferring case); *Martensen v.*

23   *Koch*, No. 12-05257 JSC, 2013 WL 4734000, at *11 (N.D. Cal. Sept. 3, 2013)

24
25   [4]    To avoid duplication of analysis, Defendants discuss the *Jones* factors in
       detail in Section II.B, infra, in conjunction with the Section 1404(a) analysis (and
       incorporates them here, to the extent this Court finds such discussion relevant).

26   [5]    This Court could, of course, simply dismiss the claims of Plaintiffs Hooper's
27   and Tasin's claims.  However, in light of Plaintiffs' counsel's preference for simply
     dismissing and refiling identical cases to avoid potential transfer (as already done
28   earlier in this case), there is little doubt Plaintiffs' counsel will simply elect to refile
     in the Northern District of California, creating two competing cases.

1   ("Courts have repeatedly held that a change of venue from a forum where there is a
2   difficult question of personal jurisdiction or venue to a district where there are not
3   such uncertainties serves the interest of justice.") (quoting *Multistate Legal Studies,*
4   *Inc. v. Marino*, 1996 WL 786124, at *1 1 (C.D. Cal. Nov. 4, 1996)); *cf. Billing*, 2010
5   WL 2542275, at *5 ("Transferring this action to the Northern District of Texas
6   [where there are two pending cases], therefore, would avoid duplicative litigation,
7   further judicial economy, and prevent the waste of resources.").
8       A Southern District of California Court recently adopted the approach
9   advocated here in transferring a TCPA action.  *See LaGuardia*, 2020 WL 2463385,
10  at *5-6.  There, the Court was confronted with a case involving four plaintiffs, for
11  three of whom venue was improper.  *Id.*  The defendants sought "transfer of the
12  entire action, arguing that the interests of justice will be best served by transferring
13  this action to the Southern District of Ohio [the defendants' home forum] as it will
14  allow a single consolidated action to proceed in one district . . . ."  *Id.* at *6.  The
15  Court agreed, severing and transferring the three plaintiffs for which venue was
16  improper under Section 1406(a) and then transferring the remaining plaintiff under
17  Section 1404(a) to allow a consolidated action to proceed in one forum.  *Id.* at *6, 9.
18      A similar procedure was used in *In re Nissan North America Litigation*.  *See*
19  No. 18-CV-07292-HSG, 2019 WL 4601557 (N.D. Cal. Sept. 23, 2019).  In *Nissan*,
20  a group of ten plaintiffs (only one of whom resided in California) brought a class
21  action over a concealed brake defect.  *Id.* at *1.  The Court found venue improper as
22  to the nine non-resident plaintiffs.  *Id.* at *7.  The Court determined that transfer to
23  the ***Middle District of Tennessee*** was appropriate as it was the defendant's principal
24  place of business, nine of the ten plaintiffs resided outside the District and it was
25  more convenient as it related to the witnesses and evidence.  *Id.* at *7-10.  The Court
26  thus transferred the entire action under Sections 1406(a) and 1404(a).  *Id.* at *7, 10.
27      The Middle District of Tennessee is the only venue proper as to all Plaintiffs.
28  Proceeding in a single, proper forum is the most judicially efficient path forward.

16

1   Defendants recognize venue is proper as to Plaintiffs Lucas and Smith, and Section

2   1406(a) does not apply to them.  Accordingly, the proper course of action would be

3   to sever the claims of Hooper and Tasin under Federal Rule of Civil Procedure 21

4   and transfer those claims to the Middle District of Tennessee.  *See, e.g.*, *LaGuardia*,

5   2020 WL 2463385, at *6 ("[A] district court may sever any claim against a party to

6   create a new action that may be transferred to cure a defect in venue.") (citing *Anrig*

7   *v. Ringsby United*, 603 F.2d 1319, 1325 (9th Cir. 1979) and Rule 21; *Johnson v.*

8   *Relves*, No. 13-0866-PA DTB, 2014 WL 1325388, at *6 (C.D. Cal. Feb. 10, 2014),

9   *R&R adopted*, 2014 WL 1325572 (C.D. Cal. Mar. 26, 2014).  And for the reasons

10  detailed below, Defendants also request that the claims of Plaintiffs Lucas and Smith

11  be transferred to the Middle District of Tennessee under Section 1404(a).

12  **II.   The Claims of Plaintiffs Lucas and Smith Should be Transferred**

13  **Pursuant to Section 1404(a).**

14  **A.   Legal Standard Under Section 1404(A).**

15  Transfer is appropriate under Section 1404(a) where transfer is being sought

16  to a jurisdiction where (i) the action "might have been brought" and (ii) convenience

17  of the parties and witnesses and the interests of justice weigh in favor of transferring

18  the action.  *See* 28 U.S.C. § 1404(a).  Section 1404(a) allows for an "individualized,

19  case-by-case consideration of convenience and fairness."  *Jones*, 211 F.3d at 498

20  (internal citation omitted).  Courts have "broad discretion" in deciding a venue

21  transfer motion.  *See, e.g.*, *Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*, No.

22  CV 09-2140 PSG(JCX), 2010 WL 883831, at *8 (C.D. Cal. Mar. 5, 2010).

23  Though Section 1404(a) specifically mentions just three factors, the Ninth

24  Circuit has adopted a number of factors to consider, including (1) the location where

25  agreements were negotiated/executed, (2) the state most familiar with the law, (3)

26  plaintiff's forum choice, (4) the parties' forum contacts, (5) the contacts between the

27  claim and forum, (6) the cost of litigating in each forum, (7) availability of

28  compulsory process and (8) ease of access to proof.  *Jones*, 211 F.3d at 498-99.

1   Courts also evaluate the efficient administration of courts. *See LaGuardia*, 2020 WL
2   2463385, at *9 (evaluating conservation of judicial resources and avoiding
3   duplication of labor); *Goff v. Nationwide Mut. Ins. Co.*, No. 17-7358 PSGAFMX,
4   2018 WL 6003578, at *2 (C.D. Cal. Apr. 5, 2018) (evaluating court congestion and
5   local interests over local matters).  The moving party bears the burden. *Id.* at *2.

6   **B.   This Case Could Have Been Brought in the Middle District of**
7   **Tennessee.**

8   Under § 1404(a), transfer can be made to any district where the case could
9   have been filed.  For the reasons discussed above, the case could have been brought
10  in the Middle District of Tennessee.  Venue (and personal jurisdiction) is appropriate
11  as both Defendants maintain their principal place of business in Nashville.  (Wailes
12  Decl. ¶¶ 4, 5.)  Nashville is in the Middle District of Tennessee.  *See* 28 U.S.C. §
13  123(b).  Further, 1404(a) is an appropriate tool for transfer because venue is proper
14  in this District as to Plaintiffs Lucas and Smith. *See, e.g.*, *Hawkins v. Gerber Prod.*
15  *Co.*, 924 F. Supp. 2d 1208, 1212 (S.D. Cal. 2013)

16  **C.   The Interests of Justice Strongly Favor Transferring This Action.**

17  The interests of justice factor takes into account the efficient and economical
18  resolution of proceedings and can alone be determinative. *See, e.g.*, *Alere Med., Inc.*
19  *v. Health Hero Network*, No. 07-05054, 2007 WL 4351019 at *1 (N.D. Cal. Dec. 12,
20  2007); *Balasanyan v. Nordstrom, Inc*., No. CV 11-05689 DDP JCGX, 2011 WL
21  5520051, at *1 (C.D. Cal. Nov. 9, 2011) ("The interests of justice, including judicial
22  economy, may be particularly important in some cases."); *LaGuardia*, 2020 WL
23  2463385, at *9 (looking to "the laudable need to conserve judicial resources and
24  avoid unnecessary duplication of labor and costs in present day litigation.").  The
25  interests of justice significantly favor transfer where the proposed transferee district
26  is the only forum in which venue is proper as to all four Plaintiffs.

27  Transfer to Tennessee (assuming transfer of Hooper's and Tasin's claims to
28  the Middle District of Tennessee under Section 1406(a)) would eliminate the

18

prospect of two identical class cases proceeding in two forums. *See, e.g.*, *LaGuardia*, 2020 WL 2463385, at *9 ("Judicial efficiency and coordination of cases also weighed in favor of transfer."); *IHS Concepts, Inc. v. BonWorth, Inc.*, No. 18-01428-RSWL-MRW, 2018 WL 3244496, at *5 (C.D. Cal. Apr. 17, 2018) ("[C]ourts often also consider the desire to avoid multiplicity of litigation resulting from a single transaction or event.") (internal quotations and citation omitted).

Transfer to the only district where venue is certain as to all named Plaintiffs (particularly if this Court views venue as uncertain as to Plaintiffs Hooper and Tasin) is the only result in line with judicial economy. *See, e.g.*, *Multistate Legal Studies*, 1996 WL 786124, at *11 (finding "Courts have repeatedly held that a change of venue" is appropriate to a district where there are no uncertainties as to venue); *Martensen*, 2013 WL 4734000, at *11 ("The Court also foresees increased litigation costs from remaining in this forum, given the hotly contested issues of personal jurisdiction and proper venue. . . These potential costs are eliminated if the case is transferred to Colorado . . . ."); *Liang*, 2014 WL 12579653, at *2 ("[I]f the case were to be transferred to the Southern District of Ohio, the need to decide these threshold issues [of personal jurisdiction and venue] would be obviated."); *cf. Delta Dawgs Constr. Corp. v. Servpro Indus., Inc.*, No. 1802907JAKJCX, 2018 WL 8731932, at *8 (C.D. Cal. Aug. 20, 2018) (transferring under Section 1404(a) and the first-to-file rule as doing so meant "[t]here will be a single proceeding in which issues are addressed, and, if pursued, a single appeal."); *Neology, Inc. v. Fed. Signal Corp.*, No. 1204422JAKJPRX, 2012 WL 13013024, at *2 (C.D. Cal. Oct. 15, 2012) ("The interests of justice analysis implicated by the pendency of a related case in another forum can be decisive in allowing transfer" even where other factors weigh against).

Further, personal jurisdiction here rests on *specific* jurisdiction. Transfer to the Middle District of Tennessee—a venue that has *general* jurisdiction—would avoid the necessity of wading into the ongoing divide as to whether a court exercising *specific* jurisdiction can oversee a *nationwide* class despite that non-

19

1    resident class members could not assert specific jurisdiction.  The issue is whether

2    the Supreme Court's *Bristol-Myers* opinion—that non-resident plaintiffs in a mass

3    tort action could not rely on specific jurisdiction—applies to class actions  *See* 137

4    S. Ct. at 1782.  This issue has divided courts.  *Compare Labrecque v. NewRez LLC*,

5    No. CV1900465, 2020 WL 3276699, at *11 (D. Ariz. June 16, 2020) ("Federal

6    districts are divided as to *Bristol-Myers*'s application in the class action context,"

7    and declining to apply it) *with Carpenter v. PetSmart, Inc.*, No. 19-CV-1731-CAB-

8    LL, 2020 WL 996947, at *5 (S.D. Cal. Mar. 2, 2020) ("This Court agrees with these

9    latter cases finding that *Bristol-Myers Squibb* applies in the nationwide class action

10   context" and striking nationwide class); *Wenokur v. AXA Equitable Life Ins. Co.*, No.

11   17-00165, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017).

12        Transferring this matter to the Middle District of Tennessee would moot this

13   concern.  *See, e.g.*, *Carpenter*, 2020 WL 996947, at *6 (noting to pursue a nationwide

14   class the plaintiff should file in a jurisdiction that has general jurisdiction).  Mooting

15   a jurisdictional concern strongly supports transfer.  *See, e.g.*, *Burnett v. Conseco Life

16   Ins. Co.*, No. 12-01715VAPSPX, 2018 WL 4945523, at *7 (C.D. Cal. Jan. 24, 2018)

17   (Phillips, J.) ("The judicial efficiency gained by avoiding a dispute over personal

18   jurisdiction weighs in favor of a transfer of venue."); *Berman v. Modell*, No. 13-CV-

19   0565 TLN, 2013 WL 5703352, at *5 (E.D. Cal. Oct. 16, 2013) ("The existence of

20   [personal] jurisdiction is dubious at best, but no similar problem will confront the

21   Maryland court.");  *SoccerSpecific.com v. World Class Coaching, Inc.*, No. CIV. 08-

22   6109-TC, 2008 WL 4960232 at *5 (D.Or. Nov. 18, 2008) ("[T]here is a substantial

23   question whether this court's assertion of personal jurisdiction over defendants for

24   all of the claims can meet the requirements of the due process clause . . . .  A change

25   of venue to Kansas will completely moot the issue of personal jurisdiction . . . .").

26        The interests of justice also favor transfer given the heavy caseload facing

27   Central District of California judges.  Central District judges have a weighted

28   caseload of *723* actions per judgeship.  The Middle District of Tennessee has a

1  weighted caseload of 468 actions per judgeship.  *See* https://www.uscourts.gov/
2  sites/default/files/data_tables/fcms_na_distprofile0331.2020.pdf; *see also Atayde v.*
3  *Napa State Hosp.*, No. 16-CV-00038-TEH, 2016 WL 1089248, at *4 (N.D. Cal. Mar.
4  21, 2016) (considering court congestion); *Irving v. Lennar Corp.*, No. S-12-290
5  KJM, 2013 WL 1308712, at *6 (E.D. Cal. Apr. 1, 2013) (same).

6      Transfer to the Middle District of Tennessee, where venue is proper as to all
7  four Plaintiffs, avoids wasting judicial resources on the personal jurisdiction issue,
8  including potential discovery and appeal, in an already congested forum.

9      **D.    The Convenience of the Parties and Witnesses and *Jones* Factors**
10          **Favor  Transferring  This  Action  to  the  Middle  District  of**
11          **Tennessee.**

12      In evaluating transfer, courts also turn to factors including (i) plaintiff's choice
13  in forum, (ii) location of the parties and witnesses, (iii) ease of access to evidence,
14  (iv) differences in litigation cost, (v) parties' contacts with the forum, (vi) contacts
15  between the suit and the forum and (vii) interests of the transferor forum. *See, e.g.*,
16  28 U.S.C. § 1404(a); *Jones*, 211 F.3d at 498.  Each of these factors favors transfer.

17      First, Plaintiffs Lucas's and Smith's choice in forum is entitled to little
18  deference given they bring a nationwide class action. *See Lou v. Belzberg*, 834 F.2d
19  730, 739 (9th Cir. 1987) ("[W]hen an individual brings a derivative suit or represents
20  a class, the named plaintiff's choice of forum is given less weight."); *Burnett*, 2018
21  WL 4945523, at *4 (same); *Kissick v. American Residential Services*, No. 19-1460-
22  MWF, 2019 WL 6434639, at *2 (C.D. Cal. July 18, 2019) (same) (internal quotations
23  and citation omitted); *Widjaja v. YUM! Brands*, No. 09-0502 DOCMLGX, 2009 WL
24  10673334, at *2 (C.D. Cal. June 8, 2009) (same).  Plaintiffs allege their putative
25  class members are "dispersed throughout the United States."  (Dkt. 1 ¶ 28.)[6]

26  
27  [6]    As it relates to Plaintiffs Hooper and Tasin, this District is likely not their
    home forum. (*See* Skinner Decl. ¶¶ 4, 5.)  To the extent Plaintiffs Hooper and Tasin
28  factor into the analysis, it bears noting that they are entitled to even less deference
    in their choice of forum because it is not their home forum and the forum otherwise

1   Plaintiffs Lucas's and Smith's choice in forum is also afforded less weight
2   given that the operative facts (as detailed below) occurred elsewhere.  That Plaintiffs
3   happened to be in California when they received the messages is hardly an operative
4   fact.  (*See* Dkt. 14 ¶ 3); *see Kissick*, 2019 WL 6434639, at *3 ("Moreover, deference
5   to a plaintiff's choice of forum is diminished if the moving party establishes that the
6   operative facts have not occurred within the forum, the forum has no particular
7   interest in the parties or subject matter . . . or the subject of the litigation is not
8   substantially connected to the forum.") (internal quotations and citation omitted);
9   *Lambert v. Tech. Res. Sols*., No. 18-1114VAPRAOX, 2018 WL 5919211, at *6 (C.D.
10  Cal. Aug. 22, 2018) (providing less deference where claims arose largely outside of
11  the forum); *James v. Orchard City Holdings, Inc*., No. 219-01885VAPMRW, 2019
12  WL 7945599, at *2 (C.D. Cal. Aug. 9, 2019) (same); *Stock v. Xerox Corp*.,
13  No.1501747MWF, 2016 WL 5867436, at *4 (C.D. Cal. Apr. 13, 2016) (same).

14  <u>Second</u>, the Middle District of Tennessee is a more convenient location for the
15  parties and witnesses (both as to the claims at issue and to any issues relating to the
16  arbitration agreement) and is a more cost-efficient location.   SDCI and SDC, LLC
17  are based in Nashville.  (Wailes Decl. ¶¶ 4, 5.)  Nearly all staff involved in creating,
18  overseeing and approving the text messages and text message program—including
19  the key witnesses identified in the Wailes Declaration (John Sheldon (CMO), Justin
20  Skinner (CTO) and Jessica Cicurel (Global Head of Customer Experience) —work
21  out of the Nashville headquarters (and will return to the office once it is safe to  do
22  so).  (*Id.* ¶¶ 11-18.)  The witnesses and document custodians are almost entirely in
23  Nashville, save for one employee in Vermont who is far closer to Nashville than Los
24  Angeles.  (*Id.*)  Plaintiffs Lucas and Smith are the only witnesses in this forum, and
25  even then the discovery needed from them will be minimal (as is typical in TCPA
26  cases).  *See, e.g.*, *Natkin v. Am. Osteopathic Ass'n*, No. LACV1508346JAKMRWX,

27
28  lacks any logical connection to this case.  *See, e.g.*, *Mirza v. Cent. Asia Inst*., No. CV1401542MMMPJWX, 2014 WL 12663437, at *12 (C.D. Cal. May 27, 2014).

1    2016 WL 7486597, at *6 (C.D. Cal. July 22, 2016) ("Most of the potential witnesses

2    whose testimony will go to the core of the disputed factual matters presented in this

3    action reside in Oregon.").

4        Courts often transfer TCPA class actions to defendants' home forums.  Judge

5    Gutierrez recently transferred a TCPA case where "litigating the case in Texas would

6    reduce costs" because the evidence and witnesses were in Texas.  *Hancock v.*

7    *Jackson Hewitt Tax Serv., Inc.*, No. 19-2602PSGPJWX, 2019 WL 8013111, at *3

8    (C.D. Cal. Aug. 29, 2019) (internal quotations omitted); *see also Kissick*, 2019 WL

9    6434639, at *6 (transferring TCPA case where "there is a possibility of achieving

10   greater judicial economy and lower overall litigation costs if the case were to transfer

11   to Tennessee," where the defendant is headquartered); *Kempton v. Life for Relief &*

12   *Dev. Inc.*, No. 19-02156-PHX, 2019 WL 5188750, at *3 (D. Ariz. Oct. 15, 2019)

13   (transferring TCPA case where "majority of documentary evidence will likely be

14   documents pertaining to [defendant's] business practices and procedures, which are

15   most likely to be found at their Michigan headquarters.  Plaintiff, on the other hand,

16   can be expected to contribute comparatively little documentary evidence to this

17   action."); *Riva v. Pepsico, Inc.*, No. 14-340 JM, 2014 WL 1729023, at *3 (S.D. Cal.

18   Apr. 30, 2014) (noting "attorney-driven statutory consumer class actions . . .

19   generally require only limited participation of the individual class representative.").

20       Plaintiffs may contend transfer is improper because Twilio--the company that

21   created the software SDC, LLC used--is located in San Francisco.  (*See* Dkt. 14 ¶ 6.)

22   Twilio, however, is outside of the 100 mile radius of this forum.  *See* Fed. R. Civ. P.

23   45(c).  Further, Judge Gutierrez recently minimized the location of a similar vendor

24   in transferring a TCPA case away from the third-party's *home forum*.  *Hancock*, 2019

25   WL 8013111, at *3 ("[A]lthough Callfire is headquartered in California, it appears

26   Plaintiff will need a significant amount of discovery from Defendant, rather than

27   CallFire, on how Defendant used CallFire's services, where the text messages

28   originated, Plaintiff's consent" and noting CallFire could be subpoenaed).  This case

23

1   overwhelmingly pertains to the actions of SDC, LLC (drafting and sending texts),

2   SDC, LLC's evidence (evidence relating to consent and arbitration) and SDC, LLC's

3   witnesses who designed the text program and consent processes.  (*See* Wailes Decl.

4   ¶¶ 10-18); *Kissick*, 2019 WL 6434639, at *3.  Twilio's role is minimal.  (Skinner

5   Decl. ¶¶ 9-11.)  Plaintiffs Lucas and Smith are the only witness in this District.  *See*

6   Virginia A. Phillips & Karen L. Stevenson, *Rutter Group Practice Guide: Federal*

7   *Civil Procedure Before Trial*, § 4:733 ("The court will consider not only the number

8   of witnesses located in the respective districts, but also the nature and quality of their

9   testimony in relation to the issues in the case.") (emphasis added).

10        It also bears noting that litigation will be far more cost-efficient in the Middle

11   District of Tennessee, as it is not only the situs of the material facts, but it is the only

12   venue proper for all four named Plaintiffs and that will avoid the *Bristol-Meyers*

13   class issue noted above.  *See, e.g.*, *Liang*, 2014 WL 12579653, at *2; *Signal IP, Inc.*

14   *v. Ford Motor Co.*, No. 14-03106 JAK, 2014 WL 4783537, at *4 (C.D. Cal. Sept.

15   25, 2014) ("Defendant can be expected to have many more trial witnesses than

16   Plaintiff.  The factual inquiries in the case are focused on Defendant's activities.").

17        Third, the Parties' contacts with this forum, the connection between this forum

18   and this suit and the proposed transferee court's connection with this suit favor

19   transfer.  The only connection this case has to this forum is that the other two

20   Plaintiffs, Lucas and Smith, apparently reside here.  This is hardly a material fact

21   relative to where nearly all of the significant facts occurred and evidence is located

22   (Nashville).  *See, e.g.*, *Kissick*, 2019 WL 6434639, at *3 (transferring TCPA case to

23   Tennessee, where defendant was based and the decisions regarding the calls took

24   place, because "[t]he Court is persuaded by ARS's argument, as the Complaint does

25   not allege that any other operative facts occurred in California apart from Plaintiff's

26   receipt of the telephone call.").  The drafting of the messages at issue, the decisions

27   regarding to whom to send the messages at issue and the use of the Twilio platform

28   all occurred in the Middle District of Tennessee.  (*See* Wailes Decl. ¶¶ 12-16.)

<u>Fourth,</u> the Middle District of Tennessee—where the decisions relating to the texts were made and where Defendants and nearly all relevant witnesses reside—has a greater interest in this case than this District. *See Kissick*, 2019 WL 6434639, at *3 (transferring TCPA case to Tennessee, where defendant is based and decisions regarding the calls took place); *Hancock*, 2019 WL 8013111, at *3 (transferring TCPA case to defendant's home forum); *Camarena v. Vanderbilt Mortg. & Fin., Inc.*, No. 15-0656, 2015 WL 4036258, at *3 (N.D. Ill. July 1, 2015) (transferring TCPA case to defendant's home forum); *Simonoff v. Kaplan, Inc.*, No. 09-5017, 2010 WL 1195855, at *3 (N.D. Ill. Mar. 17, 2010) ("This District, however, has no particular interest in resolving this dispute. . . . The citizens of New York have an interest in ensuring that corporations that call it home are justly tried-neither allowed to scoff at the law nor punished without cause."). This case stems from the conduct of Nashville defendants in Nashville. (Wailes Decl. ¶ 11-17); *cf. Hawkins*, 924 F. Supp. 2d at 1216 ("[T]he crux of the present case lies not in California, the state where Plaintiff purports to have purchased a falsely advertised product, but in New Jersey," where the defendant is based and alleged misrepresentations were made).

The relevant factors favor transferring this action to the forum from which this dispute arose and where venue is certain. Assuming this Court transfers Plaintiffs Hooper's and Tasin's action to the Middle District of Tennessee, this Court should transfer Plaintiffs Lucas's and Smith's case to the Middle District of Tennessee under Section 1404(a) such that one consolidated action can proceed in the proper venue.

## CONCLUSION

For the foregoing reasons, SDCI and SDC, LLC respectfully request that this Court (i) find venue improper as to Plaintiffs Hooper and Tasin and sever and transfer their claims to the Middle District of Tennessee under 28 U.S.C. § 1406(a), (ii) transfer the remainder of this action to the Middle District of Tennessee under to 28 U.S.C. § 1404(a); and (iii) award all other relief it deems equitable and just.

Dated: September 8, 2020          By:    /s/ Mark S. Eisen

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
Mark S. Eisen (SBN289009)
meisen@beneschlaw.com
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone:  312.212.4949
Facsimile:   312.767.9192

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO DISMISS & TRANSFER