BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
MARK S. EISEN (SBN 289009)
meisen@beneschlaw.com
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
Facsimile: 312.767.9192
Attorneys for Defendant SmileDirectClub, Inc.
and SmileDirectClub, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DAWAUN LUCAS, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SMILEDIRECTCLUB, INC. and SMILEDIRECTCLUB, LLC.,<br><br>Defendants. | Case No. 2:20-cv-06059-VAP-E<br><br>**SMILEDIRECTCLUB, INC.'S AND SMILEDIRECTCLUB, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' INDIVIDUAL CLAIMS AND STAY THE CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JUSTIN SKINNER IN SUPPORT; DECLARATION OF IAN KYLE WAILES IN SUPPORT; [PROPOSED] ORDER**<br><br>Judge: Honorable Virginia A. Phillips<br><br>Courtroom: 8A, First Street Courthouse<br><br>Hearing Date: October 19, 2020<br><br>Time: 2:00 P.M.<br><br>Complaint Filed: July 7, 2020 |

## NOTICE OF MOTION AND MOTION TO COMPEL
## ARBITRATION AND STAY THE CASE

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on October 19, 2020, in the Courtroom of the Honorable Virginia A. Phillips of the United States District Court for the Central District of California, Courtroom 8A, located at 350 West 1st Street, Los Angeles, California 90012 at 2:00 p.m. or as soon thereafter as the matter may be heard, Defendants SmileDirectClub, Inc. and SmileDirectClub, LLC will move this Court for an order compelling Plaintiffs to arbitrate their individual claims and stay this case pending arbitration.

This motion is made on the grounds that Plaintiffs each executed binding and enforceable arbitration agreements when opening their SmileDirectClub accounts. These arbitration agreements require that threshold issues of arbitrability be addressed by an arbitrator, and thus this Motion should be granted on that basis alone. Even if this Court were to address arbitrability, however, their claims are clearly within the scope of the arbitration clause. This Court should thus compel Plaintiffs to arbitrate their individual claims and stay this action. This motion is based on this notice of motion and motion, the memorandum of points and authorities, the Declarations of Justin Skinner and Ian Kyle Wailes, Plaintiffs' Complaint and any arguments presented at the hearing on this motion.

### LOCAL RULE 7-3 CERTIFICATION

Undersigned counsel hereby certifies that on August 24, 2020, counsel for the Parties met and conferred regarding the subject matter of this Motion. The Parties held a phone call to discussed Defendants' motion to compel arbitration and the arbitration agreements. The Parties were unable to reach a resolution eliminating the necessity of this Motion.

1    DATED:        September 8, 2020        Respectfully submitted,

2

3                                          By: /s/ Mark S. Eisen
                                           BENESCH, FRIEDLANDER, COPLAN &
4                                          ARONOFF LLP
                                           Mark S. Eisen (SBN289009)
5                                          meisen@beneschlaw.com
                                           71 South Wacker Drive, Suite 1600
6                                          Chicago, IL 60606
                                           Telephone:   312.212.4949
7                                          Facsimile:   312.767.9192

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO COMPEL ARB.

# **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................2

I.    The Complaint. ..............................................................................2

II.   Procedural History. .......................................................................3

III.  Plaintiffs' Accounts & Text Messages. ........................................3

    A.    The SmileDirectClub Registration Process. .......................3

    B.    The Arbitration Clause. ........................................................4

    C.    Plaintiffs' SmileDirectClub Orders. ...................................5

DISCUSSION ........................................................................................6

I.    This Court Should Compel Arbitration. ........................................6

    A.    Legal Standard. ....................................................................6

    B.    SDCI Can Move to Compel Arbitration Along with SDC, LLC. ......................................................................................8

    C.    A Valid and Binding Agreement to Arbitrate Exists. .........10

    D.    Threshold Issues of Arbitrability Have Been Delegated. .................144

    E.    Even if This Court Were to Address Arbitrability, It Should Find Plaintiffs' TCPA Claim to be Arbitrable....................................18

    F.    This Court Should Stay This Action Pending Arbitration..................25

CONCLUSION.......................................................................................25

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................. 6

*AT&T Technologies, Inc. v. Communications Workers of America*,
475 U.S. 643 (1986) ............................................................. 6, 18

*Augustine v. TLC Resorts Vacation Club*,
No. 18-cv-01120, 2018 WL 3913923 (S.D. Cal. Aug. 16, 2018) .................... 22

*Bergeron v. Monex Deposit Company*,
No. 17-cv-1968, 2018 WL 3647017 (C.D. Cal. July 9, 2018) ..................... 14

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ........................................... 11

*Blanton v. Domino's Pizza Franchising LLC*,
962 F.3d 842 (6th Cir. June 17, 2020) .................................. 8, 15, 17

*Borgarding v. JPMorgan Chase Bank*,
No. 16-cv-2485, 2016 WL 8904413 (C.D. Cal. Oct. 31, 2016) ..................... 15

*Botorff v. Amerco*,
No. 12-cv-01286, 2012 WL 6628952 (E.D. Cal. Dec. 19, 2012) ................... 24

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ............................................. 15, 16

*Cervantes v. Voortman Cookies Ltd.*,
No. 19-cv-00700, 2019 WL 3413419 (S.D. Cal. July 29, 2019) ............... 24, 25

*Chiron Corporation v. Ortho Diagnostic Systems, Inc.*,
207 F.3d 1126 (9th Cir. 2000) ................................................. 6

*Cilluffo v. Central Refrigerated Services, Inc.*,
No. 12-cv-00886, 2012 WL 8523507 (C.D. Cal. Sept. 24, 2012) .............. 18, 19

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ................................................. 8

ii

*Cooper v. Adobe Systems Incorporated*,
   No. 18-cv-06742, 2019 WL 5102609 (N.D. Cal. Oct. 11, 2019) .................... 11

*Coppock v. Citigroup, Inc.*,
   No. 11-cv-1984, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) ................. 22

*Cordas v. Uber Technologies*,
   228 F. Supp. 3d 985 (N.D. Cal. 2017) ............................................................ 11

*Cox v. Ocean View Hotel Corporation*,
   533 F.3d 1114 (9th Cir. 2008).......................................................................... 6

*De Salles v. Cook*,
   No. 16-cv-1111, 2016 WL 9113995 (C.D. Cal. May 12, 2016) ........................ 7

*Dominguez v. Stone Brewing Company, LLC*,
   No. 20-cv-251, 2020 WL 3606396 (S.D. Cal. July 2, 2020) ........................... 25

*Dziubla v. Cargill, Inc.*,
   214 F. App'x 658 (9th Cir. 2006)................................................................... 10

*Evergreen Media Holdings, LLC v. Stroock & Stroock & Lavan LLP*,
   No. 15-cv-01648, 2015 WL 12765630 (C.D. Cal. Apr. 16, 2015) .................. 19

*Farfan v. SSC Carmichael Operating Company*,
   No. 18-cv-01472, 2019 WL 415577 (N.D. Cal. Feb. 1, 2019) ..................... 9, 10

*G.G. v. Valve Corporation*,
   799 F. App'x 557 (9th Cir. 2020)................................................................... 15

*Gadomski v. Wells Fargo Bank N.A.*,
   281 F. Supp. 3d 1015 (E.D. Cal. 2018)........................................................... 23

*Gonzalez v. Coverall North America, Inc.*,
   No. 16-cv-2287, 2017 WL 4676576 (C.D. Cal. Apr. 13, 2017) ...................... 25

*Gountoumas v. Giaran, Inc.*,
   No. 18-cv-7720, 2018 WL 6930761 (C.D. Cal. Nov. 21, 2018)...................... 16

*Green Tree Financial Corp. v. Randolph*,
   531 U.S. 79 (2000) ..................................................................................... 7, 19

*Guerrero v. Equifax Credit Info. Services, Inc.*,
   No. 11-cv-6555, 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012) ...................... 19

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.

*Hart v. Charter Communications, Inc.*,
  -- Fed. App'x. --, 2020 WL 2510762 (9th Cir. May 15, 2020)............................9

*Henry Schein, Inc. v. Archer and White Sales, Inc*,
  139 S. Ct. 524, 527 (U.S. 2019) .............................................14, 15, 17

*Hernandez v. Pei Wei Asian Diner LLC*,
  No. 17-cv-00679, 2017 WL 6888260 (C.D. Cal. Oct. 2, 2017)........................7

*Hernandez v. United HealthCare Services, Inc.*,
  No. 18-cv-0420, 2018 WL 7458649 (C.D. Cal. July 26, 2018).......................16

*High-Bassalik v. Al Jazeera America*,
  No. 15-cv-04427, 2015 WL 9695227 (C.D. Cal. Nov. 2, 2015)......................25

*Hunter v. First National Bank of Omaha, NA*,
  No. 15-cv-808, 2015 WL 12672151 (S.D. Cal. July 31, 2015) .......................22

*IMEG Corporation v. Patel*,
  No. 19-cv-03990, 2019 WL 6486044 (C.D. Cal. Aug. 9, 2019).........................6

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
  863 F.2d 315 (4th Cir. 1988) ...................................................9

*Kellison v. First Premier Bank*,
  No. 17-cv-02318, 2018 WL 5880614 (C.D. Cal. Mar. 5, 2018).......................22

*Key v. Optum Services, Inc.*,
  No. 19-cv-00813, 2019 WL 6736924 (C.D. Cal. July 29, 2019).....................16

*Kilberg v. Discover Financial Services*,
  No. 16-cv-5168, 2017 WL 3528005 (D.N.J. Aug. 16, 2017) ..........................23

*La Force v. GoSmith, Inc.*,
  No. 17-cv-05101, 2017 WL 9938681 (N.D. Cal. Dec. 12, 2017).....................13

*Lainer v. Uber Technologies, Inc.*,
  No. 15-cv-09925, 2016 WL 7444925 (C.D. Cal. May 11, 2016) ..........19, 21, 23

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ........................................................24

*Lee v. Ticketmaster LLC*,
  -- Fed. App'x. --, 2020 WL 3124256 (9th Cir. June 12, 2020)...................11, 13

iv

*Lefevre v. Five Star Quality Care, Inc.*,
    No. 15-cv-01305, 2019 WL 6001563 (C.D. Cal. Nov. 12, 2019)......................10

*Lemberg v. LuLaRoe, LLC*,
    No. 17-cv-02102, 2018 WL 6927836 (C.D. Cal. Mar. 1, 2018).........................7

*Lemieux v. HSBC Card Services, Inc.*,
    No. 07-cv-1581, 2007 WL 9776742 (S.D. Cal. Dec. 13, 2007) .......................22

*Lewis v. Advance America, Cash Advance Centers of Illinois*,
    No. 13-cv-942, 2014 WL 47125 (S.D. Ill. Jan. 6, 2014)...................................24

*Life Care Centers of America, Inc. v. Estate of Blair by & through Rhoden*,
    No. 17-cv-0249, 2017 WL 3432209 (D.N.M. Aug. 9, 2017) ...........................18

*Lozada v. Progressive Leasing d/b/a Prog Leasing LLC*,
    No. 15-cv-2812, 2016 WL 3620756 (E.D.N.Y. June 28, 2016) ................. 19, 22

*Luafau v. Affiliated Computer Services, Inc.*,
    No. 06-cv-0347 CW, 2006 WL 1320472 (N.D. Cal. May 15, 2006) ...............15

*Lundbom v. Schwan's Home Service, Inc.*,
    No. 18-cv-02187, 2020 WL 2736419 (D. Or. May 26, 2020) ..........................13

*Malik v. F-19 Holdings, LLC*,
    No. 15-cv-130, 2016 WL 2939150 (E.D. Ky. May 19, 2016)...........................22

*Mason v. BMW Financial Services, NA*,
    No. 14-cv-01357, 2014 WL 12591299 (C.D. Cal. Sept. 18, 2014) ..................19

*Mason v. BMW Financial Services, NA*,
    No. 15-cv-01323, 2015 WL 12781212 (C.D. Cal. Nov. 17, 2015).............18, 19

*McLellan v. Fitbit, Inc.*,
    No. 16-cv-00036, 2018 WL 1913832 (N.D. Cal. Jan. 24, 2018)......................11

*McLeod v. Ford Motor Company*,
    No. 04-cv-1255, 2005 WL 3763354 (C.D. Cal. Apr. 14, 2005) .........................9

*Miller v. Time Warner Cable Inc.*,
    No. 16-cv-00329, 2016 WL 7471302 (C.D. Cal. Dec. 27, 2016)......................16

*Moore v. T-Mobile USA*,
    No. 10-cv-527, 2012 WL 13036858 (E.D.N.Y. Sept. 28, 2012) ......................23

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.

*Moses H. Cone Memorial Hosp. v. Mercury Construction Corporation*,
    460 U.S. 1 (1983) .................................................................................... 6, 18, 23

*Moua v. Optum Services, Inc.*,
    320 F. Supp. 3d 1109 (C.D. Cal. 2018) ............................................................ 10

*Nationall Union Fire Insurance Company of Pittsburgh, PA v. Konvalinka*,
    No. 10-9355, 2011 WL 13070859 (S.D.N.Y. Mar. 17, 2011) ............................ 8

*Nexteer Automotive Corporation v. Korea Delphi Automotive*
    *Systems Corporation*,
    No. 13-cv-15189, 2014 WL 562264 (E.D. Mich. Feb. 13, 2014) ...................... 7

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) .................................................................... 10, 11

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ............................................................................ 10

*Razzaghi v. UnitedHealth Group*,
    No. 18-cv-01223, 2018 WL 7824552 (C.D. Cal. Sept. 17, 2018) ..................... 16

*Reed v. Johnson*,
    No. 14-cv-176, 2016 WL 913232 (N.D. Miss. Mar. 9, 2016) ........................... 17

*Reeners v. Verizon Communications*,
    No. 11-cv-0573, 2011 WL 2791262 (M.D. Tenn. July 14, 2011) ..................... 24

*Roberts v. Luxottica of America Inc.*,
    No. 19-cv-08960, 2020 WL 2213464 (C.D. Cal. Jan. 30, 2020) .............. 7, 8, 25

*Robinson v. Delicious Vinyl Records*,
    No. 13-cv-04111, 2014 WL 5332837 (C.D. Cal. Oct. 20, 2014)....................... 18

*Sam Reisfeld & Son Import Company v. S. A. Eteco*,
    530 F.2d 679 (5th Cir. 1976) .............................................................................. 9

*Savetsky v. Pre-Paid Legal Services, Inc.*,
    No. 14-cv-03514, 2015 WL 604767 (N.D. Cal. Feb. 12, 2015) ....................... 11

*Sherman v. RMH*,
    No. 13CV1986-WQH-WMC, 2014 WL 30318 (S.D. Cal. Jan. 2,
    2014) ................................................................................................................. 21

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.

*Smith v. Massachusetts Mutual Life Insurance Company*,
    No. 09-cv-06765, 2010 WL 11545610 (C.D. Cal. May 25, 2010) .................. 8, 9

*Sollinger v. SmileDirectClub, LLC*,
    No. 19-cv-5977, 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020)...........2, 12, 13, 17

*Spanos v. Kaiser Foundation Health Plan*,
    No. 19-cv-00097, 2019 WL 7945608 (C.D. Cal. Sept. 25, 2019) .................... 25

*Thomas v. Wells Fargo Dealer Services*,
    No. 13-cv-5168, 2013 WL 12114768 (C.D. Cal. Oct. 1, 2013)........................ 21

*Thompson v. Hensley*,
    136 S.W.3d 925 (Tenn. Ct. App. 2003) ............................................................ 10

*Tseng v. BMW of North America, LLC*,
    No. 20-cv-00256, 2020 WL 4032305 (C.D. Cal. Apr. 15, 2020) ....................... 8

*Williams v. Eaze Solutions, Inc.*,
    417 F. Supp. 3d 1233 (N.D. Cal. 2019) ........................................................... 15

*Wishner v. Wells Fargo Bank*,
    No. 16-cv-2832, 2016 WL 10988765 (C.D. Cal. Sept. 28, 2016) .................... 22

*Worldwide Film Productions, LLC v. JPMorgan Chase Bank, N.A.*,
    No. 19-cv-10337, 2020 WL 2730926 (C.D. Cal. Mar. 13, 2020)..................... 14

**Statutes & Rules**

9 U.S.C. § 2.............................................................................................................. 6

9 U.S.C. § 3........................................................................................................ 1, 25

9 U.S.C. § 4.............................................................................................................. 1

47 U.S.C. § 227........................................................................................................ 2

Federal Rule of Civil Procedure 12 ......................................................................... 7

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.

**Other Authorities**

AAA Commercial Arbitration Rules at R-7(a),
    https://adr.org/sites/default/files/Commercial%20Rules.pdf
    (effective October 1, 2013).................................................................................14

Virginia A. Phillips & Karen L. Stevenson, *Federal Civil Procedure
    Before Trial, California and Ninth Circuit Editions*, § 16:92..............................8

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.

## INTRODUCTION

Pursuant to Sections 3 and 4 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 3-4, SmileDirectClub, Inc. ("SDCI") and SmileDirectClub, LLC ("SDC, LLC") respectfully move this Court to compel individual arbitration of Plaintiffs' respective claims and to stay this action pending arbitration.[1]

This Action comes on the heels of the recently dismissed *Philip* Action, this time brought by four Plaintiffs. *See Philip v. SmileDirectClub, Inc.*, No. 20-cv-1111 (C.D. Cal.)  Plaintiffs, however, each agreed to binding arbitration clauses.  Each created SmileDirectClub accounts online and made appointments to be evaluated at retail locations known as SmileShops to see if they were candidates for clear aligner treatment.  In creating their accounts, Plaintiffs agreed to the Informed Consent Agreement, which bound them to arbitrate.  The Informed Consent Agreement presented a clear and conspicuous alternative dispute resolution provision through which each Plaintiff agreed to arbitrate under the rules of the American Arbitration Association ("AAA").  (*See* Declaration of Justin Skinner, ["Skinner Decl."] ¶¶ 14-17, attached as Exhibit A.)  Plaintiffs Lucas, Hooper and Tasin scheduled SmileShop appointments and proceeded with their appointments.  Plaintiff Smith eventually chose to request a doctor-prescribed, remote impression kit.  Despite their being approved to proceed with doctor-directed clear aligner therapy or doctor-prescribed at-home impression kit, none of the Plaintiffs have yet proceeded.

This Court should compel Plaintiffs to individually arbitrate their claims.  As an initial matter, each agreed to arbitrate pursuant to the rules of the AAA.  Under those rules, threshold issues of arbitrability—that is, whether the claims are subject to the arbitration clause—are for an arbitrator to decide.  Just a few months ago, a Southern District of New York court determined the materially identical arbitration clause in a case against SDC, LLC delegated arbitrability to the arbitrator.  *See*

---

[1]    Simultaneously herewith, Defendants have filed a motion to dismiss pursuant to Rule 12(b)(3) and to transfer to the Middle District of Tennessee.  Defendants believe the 12(b)(3) motion should be evaluated first to ensure proper venue.

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.

*Sollinger v. SmileDirectClub, LLC*, No. 19-CV-5977 (JPO), 2020 WL 774135, at *3 (S.D.N.Y. Feb. 18, 2020). This Court should compel arbitration on this basis alone.

Even if this Court addressed arbitrability itself, it should compel arbitration. The arbitration clause covers any dispute regarding the products and services offered by or through SmileDirectClub. Plaintiffs bring this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, stemming from text messages regarding their own aligner treatments, scheduled appointments and scheduling future appointments. Plaintiffs Lucas, Hooper and Tasin all (i) scheduled an appointment at a SmileShop, (ii) attended an appointment at a SmileShop and (iii) had clear aligner treatments approved by a dentist or orthodontist whose affiliated professional dental corporation had engaged SDC, LLC to use its dental support organization services and teledentistry platform. Plaintiff Smith requested and received a doctor-prescribed impression kit to be turned into a 3D scan of his teeth and gums and subsequently be reviewed by a dentist or orthodontist licensed in his state to assist in determining whether he was a viable candidate for clear aligner therapy. Messages pertaining to appointments and aligner therapy fall squarely within a dispute concerning SmileDirectClub products and services. This Court should—even if it decides the issue of arbitrability—compel arbitration.

Though Defendants contend that arbitrability is an issue reserved to the arbitrator, even if this Court evaluated arbitrability it should nevertheless compel individual arbitration of Plaintiffs' respective claims and stay this case.

## BACKGROUND

### I.   The Complaint.

Plaintiffs allege they received unsolicited text messages on their cell phones. (Dkt. 1 ¶¶ 8-18.) Plaintiffs contend the texts they received pertained to Defendants' "products and services." (*Id.* ¶¶ 8-19.) Plaintiffs each assert one TCPA claim and seek to represent a nationwide class of persons who received a marketing message from Defendants without their consent in the last four years. (*Id.* ¶¶ 28, 36-42.)

1  Plaintiffs name SDC, Inc. and SDC, LLC as defendants.  Plaintiffs state SDC,

2  Inc. is merely a holding company, but nevertheless allege SDC, Inc. "operates and

3  controls" SDC, LLC and that both together sent unlawful text messages.  (*Id.* ¶ 5.)

4  **II.    Procedural History.**

5  The present case is not the first filed by Plaintiffs' counsel.  On February 3,

6  2020, Plaintiffs' counsel filed an identical action on behalf of an identical class,

7  captioned *Philip v. SmileDirectClub, Inc.*, No. 20-cv-1111-VAP-E (C.D. Cal.) (the

8  "*Philip* Action").  Apparently dissatisfied with the way that action was proceeding—

9  and rather than simply amending that complaint to add new plaintiffs—Plaintiffs'

10  counsel dismissed the *Philip* Action and refiled the instant case.

11  **III.    Plaintiffs' Accounts & Text Messages.**

12  On November 14, 2019 Plaintiff Lucas created a SmileDirectClub account

13  online and scheduled an appointment at a SmileShop.  (Skinner Decl. ¶ 19.)  On June

14  19, 2018, Plaintiff Hooper created a SmileDirectClub account online and scheduled

15  an appointment at a SmileShop.  (*Id.* ¶ 20.).  On December 7, 2019, Plaintiff Tasin

16  created a SmileDirectClub account and scheduled an appointment at a SmileShop.

17  (*Id.* ¶ 21.)  On January 14, 2018, Plaintiff Smith created a SmileDirectClub account

18  online and scheduled an appointment at a SmileShop.  (*Id.* ¶ 22.)

19  The messages at issue in this case were sent by SDC, LLC.  (*See* Declaration

20  of Kyle Wailes ['Wailes Decl."] ¶ 6 attached as Exhibit B.)  SDC, LLC operates and

21  controls the account-creation process and transmits the text messages at issue.  (*Id.*)

22  **A.    The SmileDirectClub Registration Process.**

23  A consumer must first go through SDC, LLC's registration process before

24  they can become a SmileDirectClub customer and take advantage of SDC, LLC's

25  clear aligner therapy services.  (Skinner Decl. ¶ 5, 6.)  Consumers can create an

26  account directly through the website www.smiledirectclub.com, or during an in-

27  person visit to a SmileShop, where they complete an online process.  (*Id.* ¶ 7.)

28  During their respective account creation processes, Plaintiffs Lucas and Tasin were

required to affirmatively check a box to agree to the Informed Consent Agreement:

☐   I agree to SmileDirectClub's Informed Consent and Terms &
SmilePay Conditions

 (*Id.* ¶¶ 8, 9.)  This checkbox *was not* prechecked.  (*Id.*)  Plaintiffs Smith and Hooper, who created accounts earlier, were presented with a materially identical checkbox.  (*Id.* ¶ 10)  However, the box may have been pre-checked.  (*Id.*)   To proceed with account creation, the box must have either been checked or left checked.  (*Id.* ¶ 12.)

After Plaintiffs checked (or left checked) the box, they had to then select "Finish My Account" to proceed with registration. (*Id.* ¶ 18.) The Informed Consent Agreement is presented to users as a hyperlink that, when clicked, takes the user to another screen that displays the full text.  (*Id.* ¶ 13)  Customers have the option to read and print the agreement before checking or leaving checked the box.  (*Id.*)

**B.     The Arbitration Clause.**

At the times Plaintiffs created their accounts, two Arbitration Clauses were in effect.  The Arbitration Clause agreed to by Plaintiffs Lucas and Tasin states:

> AGREEMENT  TO  ARBITRATE  -- I hereby agree that ***any dispute regarding the products and services offered through SmileDirectClub*** and/or by my affiliated dental professionals, including but not limited to medical malpractice disputes, will be resolved through final and binding arbitration before a neutral arbitrator and not by lawsuit filed in any court, except claims within the jurisdiction of Small Claims Court.  I understand that I am waiving any right I might otherwise have to a trial by a jury. . . . ***I agree that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association***.

 (*Id.*, Ex. 1 at 5, Ex. 2 at 5, emphasis added.)  This clause also includes an express class waiver.  (*Id.*)

The Arbitration Clause in the Informed Consent Agreement agreed to by Plaintiffs Hooper and Smith states:

> AGREEMENT TO ARBITRATE - I hereby agree that ***any dispute regarding the products and services offered [b]y SmileDirectClub*** and/or affiliated dental professionals including but not limited to medical malpractice disputes, will be determined by submission to arbitration and not [b]y lawsuit filed in any court, except claims within the jurisdiction of Small Claims Court. . . . ***I agree that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association.***

(*Id.*, Ex. 3 at 3, Ex. 4 at 3, emphasis added.)  These clauses are identical in relevant part (except as noted below).  Defendants refer to them as the "Arbitration Clause."

## C.     Plaintiffs' SmileDirectClub Orders.

On June 20, 2018, November 21, 2019 and December 9, 2019, respectively, Plaintiffs Hooper, Lucas and Tasin visited local SmileShops, where they provided information about their dental and health histories and chief complaints and learned about the teledentistry platform that SDC, LLC enables for the provision of clear aligner therapy by state-licensed dentists and orthodontists to their patients.  (*Id.* ¶ 28.)  Their information and draft aligner treatment plans were sent to a dentist or orthodontist licensed to practice in the state of their residence for assessment, diagnosis and, if appropriate, treatment.  (*Id.* ¶ 29.)  The aligner treatment plans were approved by their respective treating dentist or orthodontist.  (*Id.*)  Plaintiff Smith scheduled an appointment at a SmileShop, but later requested and received a doctor-prescribed impression evaluation measurement kit to have his viability for treatment evaluated by a dentist or orthodontist, rather than going into a SmileShop.  (*Id.* ¶ 31.)

Plaintiffs Hooper, Lucas and Tasin did not complete the payment process for their clear aligner therapy treatment.  (*Id.* ¶ 32.)  They were thus sent text messages

1  by SDC, LLC concerning their existing appointments, orders (*i.e.*, their Smile Plans,
2  which reflect dentist or orthodontist-approved treatment plans based on the initial
3  information collected from the patient, including their specific dental scan or
4  impression), completing their purchases and booking new appointments when their
5  previously-approved Smile Plans expired.  (*Id.*)  Because Plaintiff Smith did not
6  return the impression kit, SDC, LLC sent text messages regarding scheduling a
7  SmileShop appointment so that photographs could be obtained to create a 3D image
8  of his teeth and gums for subsequent review by the dentist or orthodontist who would
9  be overseeing his diagnosis and possible treatment.  (*Id.* ¶ 37.)

10  **DISCUSSION**

11  **I.  This Court Should Compel Arbitration.**

12  **A.  Legal Standard.**

13  The FAA "reflect[s] both a liberal federal policy favoring arbitration, . . . and
14  the fundamental principle that arbitration is a matter of contract." *AT&T Mobility*
15  *LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations & citations
16  omitted).  The FAA provides a written arbitration agreement "shall be valid,
17  irrevocable, and enforceable, save upon such grounds as exist in law or in equity for
18  the revocation of any contract." 9 U.S.C. § 2; *Cox v. Ocean View Hotel Corp.*, 533
19  F.3d 1114, 1119 (9th Cir. 2008).  The Supreme Court has made it clear "as a matter
20  of federal law, any doubts concerning the scope of arbitrable issues should be
21  resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury*
22  *Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *IMEG Corp. v. Patel*, 19-c-03990-R-AFM,
23  2019 WL 6486044, at *4 (C.D. Cal. Aug. 9, 2019) ("The FAA requires that courts
24  compel arbitration "unless it may be said with positive assurance that the arbitration
25  clause is not susceptible of an interpretation that covers the asserted dispute.")
26  (quoting *AT&T Tecs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).
27  The role of this Court in evaluating a motion to compel arbitration is "limited
28  to determining (1) whether a valid agreement to arbitrate exists and, if it does,

6

(2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000).  If both questions are answered in the affirmative, the FAA requires that the dispute be sent to arbitration. *Id.*; *see Roberts v. Luxottica of Am. Inc.*, No. 19-08960VAPJCX, 2020 WL 2213464, at *3 (C.D. Cal. Jan. 30, 2020).  The party opposing arbitration bears the burden of challenging the agreement to arbitrate.  *See, e.g.*, *Roberts*, 2020 WL 2213464, at *3.

Some courts within this District treat motions to compel arbitration as akin to motions filed under Rule 12.  *See, e.g.*, *De Salles v. Cook*, No. 161111DMGPJWX, 2016 WL 9113995, at *4 (C.D. Cal. May 12, 2016) (collecting authority, noting that courts have looked to Rules 12(b)(1), 12(b)(3) and 12(b)(6)).  Other courts have treated motions to compel arbitration as one of a type of preliminary motion not specifically enumerated under Rule 12(b).  *See, e.g.*, *id.*; *Hernandez v. Pei Wei Asian Diner LLC*, No. 817CV00679JLSJCG, 2017 WL 6888260, at *2 (C.D. Cal. Oct. 2, 2017) (finding Rule 12(b)(1) an improper vehicle and instead evaluating the motion "through the lens of its separate Motion to Compel Arbitration."); *Lemberg v. LuLaRoe, LLC*, No. EDCV1702102ABSHKX, 2018 WL 6927836, at *3 (C.D. Cal. Mar. 1, 2018) (finding a motion to compel arbitration "akin to a motion under Rule 12," and collecting cases highlighting a variety of approaches); *cf. Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 83 (2000) ("In lieu of an answer, petitioners filed a motion to compel arbitration, to stay the action, or, in the alternative, to dismiss.").

The Ninth Circuit has not clarified whether motions to compel arbitration are appropriately filed under Rule 12 or are a *sui generis* preliminary motion brought under the FAA.  *See, e.g.*, *Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp*., No. 13-15189, 2014 WL 562264, at *4 (E.D. Mich. Feb. 13, 2014) ("The court agrees with those courts finding that the issue of whether to compel arbitration is governed by the FAA itself . . .").  Defendants contend motions to compel arbitration are governed simply by Section 4 of the FAA.  However, this Court need not select a specific framework as they each lead to the same result—this Court can consider

7

1    matters outside of the pleadings.  This Court has evaluated motions to compel

2    arbitration without referencing Rule 12.  *See, e.g.*, *Roberts*, 2020 WL 2213464, at

3    \*3; *Tseng v. BMW of N. Am., LLC*, No. 20-00256VAPAFMX, 2020 WL 4032305,

4    at \*2 (C.D. Cal. Apr. 15, 2020); Virginia A. Phillips & Karen L. Stevenson, *Federal*

5    *Civil Procedure Before Trial, California and Ninth Circuit Editions*, § 16:92.

6           **B.    SDCI Can Move to Compel Arbitration Along with SDC, LLC.**

7           At the outset, Plaintiffs executed the Informed Consent Agreements with

8    SDC, LLC.   (*See* Wailes Decl. ¶ 8.)   SDC, LLC operates and controls the

9    SmileDirectClub account registration process.  (*Id.* ¶ 7.) SDC, LLC is also the entity

10   that sent the messages at issue.  (*Id.* ¶ 7.)  Plaintiffs' counsel is aware of this, as it

11   was made abundantly clear through significant briefing in the first-filed *Philip*

12   Action.  *See Philip*, No. 20-cv-1111, Dkt. 16-1, Dkt. 22 at 2.  Nevertheless, Plaintiffs

13   insist on naming SDCI as a defendant as well.  SDCI is a holding company, with no

14   offices or employees.  (Wailes Decl. ¶ 6.)  Whether or not Plaintiffs have a claim

15   against SDCI (they do not), what matters for purposes of this motion is that Plaintiff

16   alleges SDCI "operates and controls" SDC, LLC and acted jointly with SDC, LLC.

17   (Dkt. 1 ¶ 5.)  As such, SDCI can enforce the Arbitration Clause.

18          SDCI can enforce the Arbitration Clause (and delegation provision therein)

19   under general agency principles often applied in the arbitration context.[2]  California

20   courts allow nonsignatories to enforce arbitration agreements under basic agency

21   principles.  *See, e.g.*, *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).  A

22   fundamental premise of this concept is "if a party could avoid the practical

23   consequences of an agreement to arbitrate by naming nonsignatory parties as

24   [defendants] in his complaint, . . . the effect of the rule requiring arbitration would,

---

25   [2]    In actuality, this Court need only determine whether SDCI can enforce the

26   *delegation provision* alone.  Once the Court makes that determination, the issue of
     whether SDCI can enforce the Arbitration Clause more generally becomes an issue
     for the arbitrator.  *See, e.g.*, *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d

27   842, 852 (6th Cir. June 17, 2020); *see also id.* at 845 n.1 (treating as conceptually
     distinct the question of whether the defendant franchisor could enforce the

28   delegation provision of the arbitration clause).

1   in effect, be nullified." *Smith v. Mass. Mut. Life Ins. Co*, No. 0906765MMMSSX,

2   2010 WL 11545610, at *7 (C.D. Cal. May 25, 2010) (internal quotations & citation

3   omitted).   Myriad courts have reached the same conclusion.   *See Nat'l Union Fire*

4   *Ins. Co. of Pitt., PA v. Konvalinka*, No. 10-9355, 2011 WL 13070859, at *3 (S.D.N.Y.

5   Mar. 17, 2011) ("Parties to contractual arbitration clauses cannot avoid arbitration

6   by suing entities related to the counterparty to the contract."); *J.J. Ryan & Sons, Inc.*

7   *v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320 (4th Cir. 1988) ("When the charges

8   against a parent company and its subsidiary are based on the same facts and are

9   inherently inseparable, a court may refer claims against the parent to arbitration even

10  though the parent is not formally a party to the arbitration agreement."); *Sam Reisfeld*

11  *& Son Imp. Co. v. S. A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) ("If the parent

12  corporation was forced to try the case, the arbitration proceedings would be rendered

13  meaningless and the federal policy in favor of arbitration effectively thwarted.").

14      Using agency principles, a nonsignatory can "compel arbitration under

15  arbitration clauses signed by their corporate parents, subsidiaries, or affiliates, at

16  least when the allegations against the nonsignatory corporation do not differ

17  substantially from those against its signatory affiliate." *Farfan v. SSC Carmichael*

18  *Operating Co*, No. 18-01472-HSG, 2019 WL 415577, at *5 (N.D. Cal. Feb. 1, 2019)

19  (internal quotations and citation omitted); *Smith*, 2010 WL 11545610, at *7 (same).

20  Nonsignatory principles can enforce the arbitration agreements of subsidiaries where

21  identical claims are brought against both. *See, e.g.*, *Hart v. Charter Commc'ns, Inc.*,

22  -- Fed. App'x. --, 2020 WL 2510762, at *2 (9th Cir. May 15, 2020) ("Charter,

23  Spectrum's parent company, also can enforce the agreement because Hart sued both

24  Spectrum and Charter, bringing identical claims against them.") (citing *Boucher v.*

25  *All. Title Co.*, 127 Cal. App. 4th 262, 269 (2005)); *Smith*, 2010 WL 11545610, at *8

26  ("[T]he factual allegations underlying plaintiff's claims against MassMutual are

27  based on the same facts as or are inherently inseparable from plaintiff's relationship

28  with MML," allowing parent to enforce arbitration clause); *McLeod v. Ford Motor*

9

1  *Co.*, No. 04-1255VAPSGLX, 2005 WL 3763354, at *4 (C.D. Cal. Apr. 14, 2005)

2  (same); *Dziubla v. Cargill, Inc.*, 214 F. App'x 658, 659 (9th Cir. 2006) ("Dziubla

3  treated the signatory subsidiaries and Cargill, Inc. as a single unit throughout his

4  pleadings. Moreover, arbitration is appropriate under reverse agency law.").[3]

5      Here, the claims against SDCI are identical to the claims against SDC, LLC.

6  Plaintiffs claim that SDCI "operates and controls" SDC, LLC and from that point

7  forward in the Complaint lumps the entities together and refers to both jointly as

8  "defendants." (*See* Dkt. 1 ¶¶ 5, 7-27.)  SDCI can thus invoke agency principles to

9  enforce the Arbitration Clause.  It would undermine entirely the purpose of an

10  arbitration agreement if it could be evaded simply by naming a nonsignatory parent.[4]

11  **C.    A Valid and Binding Agreement to Arbitrate Exists.**

12      Whether a valid agreement to arbitrate was formed is a question of state law.

13  *See Moua v. Optum Servs., Inc.*, 320 F. Supp. 3d 1109, 1113 (C.D. Cal. 2018).  In

14  California, the "touchstone" of contract formation turns on "[m]utual manifestation

15  of assent . . . ." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)

16  (internal quotations and citation omitted); *Lefevre v. Five Star Quality Care, Inc.*,

17  No. 15-01305VAPSPX, 2019 WL 6001563, at *5 (C.D. Cal. Nov. 12, 2019) (same).[5]

18      A valid agreement to arbitrate exists here.  Each Plaintiff created an account

19  after agreeing to the hyperlinked and underlined Informed Consent Agreement,

---

20  [3]    The application of this rule here turns on Plaintiffs' allegations.  SDCI does

21  not control or operate SDC, LLC or the messages at issue.  There is no agency relationship.  Nevertheless, Plaintiffs' allegations of control and joint operation of

22  the messaging program are sufficient to allow SDCI to enforce the Arbitration Clause.  Were the case otherwise, Plaintiffs could evade arbitration by naming a non-

23  signatory holding company.  *See Farfan*, 2019 WL 415577, at *5

24  [4]    It bears noting the Arbitration Clause applies to disputes regarding products and services offered *through* or *by* SmileDirectClub.  (Skinner Decl., Ex. 1-4.)  This

25  breadth encompasses claims brought against nonsignatories pertaining to products and services offered through or by SmileDirectClub.  (*Id.*)

26  [5]    Defendants contend California law applies to contract formation, as it is where Plaintiffs executed the agreements.  Even if this Court looked to the "governmental

27  interest analysis" to determine which state law applied, *see Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010), the only other available law would be Tennessee, where Defendants are headquartered.  (*See* Wailes Decl. ¶¶ 4, 5.)  Tennessee law is

28  in accord.  *See Thompson v. Hensley*, 136 S.W.3d 925, 929 (Tenn. Ct. App. 2003).

containing a clear and conspicuous arbitration clause.  (*See* Skinner Decl. ¶¶ 8-18, 24-27.)  This is a "clickwrap" agreement often used to obtain mutual assent.  *See, e.g.*, *Savetsky v. Pre-Paid Legal Servs., Inc.*, No. 14-03514, 2015 WL 604767, at *3 (N.D. Cal. Feb. 12, 2015) ("[C]ourts generally find that clickwrap agreements are enforceable."); *McLellan v. Fitbit, Inc.*, No. 3:16-00036-JD, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018) ("Fitbit's ToS is a classic 'clickwrap' agreement, a type of agreement that courts routinely find valid and enforceable because the user must affirmatively acknowledge receipt of the terms of the contract."); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) ("[A]lmost [e]very [lower] court to consider the issue has found 'clickwrap' licenses, in which an online user clicks 'I agree' to standard form terms, enforceable.") (internal quotations & citation omitted)

The key inquiry is whether the user has sufficient notice of the agreement to constitute constructive assent. *See, e.g.*, *Lee v. Ticketmaster LLC*, -- Fed. App'x. --, 2020 WL 3124256, at *2 (9th Cir. June 12, 2020) ("Ticketmaster's website provided sufficient notice for constructive assent . . . ."); *Nguyen*, 763 F.3d at 1176 ("Courts have also been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website.").  In *Lee*, the Ninth Circuit found sufficient an agreement where the plaintiff clicked on a "sign in" or "place order" button, below which included language notifying the plaintiff that so clicking constituted agreement to the terms of use.  *Id.*; *see also Cooper v. Adobe Sys. Inc.*, No. 18-06742, 2019 WL 5102609, at *5 (N.D. Cal. Oct. 11, 2019) ("Courts have consistently enforced similar 'clickwrap' or 'browsewrap' agreements formed on the Internet where the user had actual notice of the agreement or where the user was required—as Cooper was—to affirmatively acknowledge the agreement before proceeding with use of the service."); *Cordas v. Uber Techs.*, 228 F. Supp. 3d 985, 990 (N.D. Cal. 2017) (finding a binding agreement where the plaintiff agreed to the terms by clicking "done" to create an account).

Just a few months ago, a Southern District of New York court upheld the validity of the identical Arbitration Clause, agreed to in identical fashion as Plaintiffs did here. *See Sollinger*, 2020 WL 774135, at *3. As held in *Sollinger*, regarding the same account-creation page and checkbox, "SmileDirectClub's website provides the requisite inquiry notice. It presents the Informed Consent Agreement as 'clickwrap,' which refers to the assent process by which a user must click 'I agree,' but not necessarily view the contract to which she is assenting." *See* 2020 WL 774135, at *2 (internal quotations & citation omitted). The court enforced the agreement, holding that the registration screen is uncluttered, requires a checkbox and has clear blue and underlined hyperlinks to the Informed Consent Agreement. *Id.* at *2-3.

Plaintiffs were on clear notice of the agreement through the following screen:



(Skinner Decl. ¶¶ 8-10.)[6] The screen is uncluttered and has only a few fields. The user does not have to scroll beyond what is immediately visible. Clearly shown is the checkbox and hyperlinked and blue Informed Consent Agreement.

---

[6]    The screen viewed by Plaintiff Smith had one minor difference not relevant here. The language next to the checkbox read "I agree to SmileDirectClub's Informed Consent and Terms of Use," rather than "Informed Consent and Terms & SmilePay Conditions." (Skinner Decl. ¶ 11.) This distinction is not pertinent here as the Informed Consent Agreement is the only agreement at issue.

Defendants determined that Plaintiffs Lucas and Tasin were presented with an unchecked box, and checked the box next to the Informed Consent Agreement. (*Id.* ¶ 9.) Because of a technical issue when Plaintiffs Hooper and Smith registered, the checkbox next to the Informed Consent Agreement may have been pre-checked. (*Id.* ¶ 10) Even if it was pre-checked, it is irrelevant here. Both Plaintiffs had to either check the box or leave it pre-checked to complete their registration. (*Id.* ¶ 12.) Further, all Plaintiffs had to *also* select "Finish My Account" to proceed. (*Id.* ¶ 18); *see La Force v. GoSmith, Inc.*, No. 17-05101, 2017 WL 9938681, at *1 (N.D. Cal. Dec. 12, 2017) (compelling arbitration with a clickwrap agreement where the box next to the terms "is checked by default and must remain checked in order for the user to complete registration."); *Lundbom v. Schwan's Home Serv., Inc.*, No. 18-02187-IM, 2020 WL 2736419, at *8 (D. Or. May 26, 2020) (finding clicking on a "Complete Registration" button sufficient to agree to terms next to a pre-checked box the plaintiff did not uncheck). Indeed, a checkbox is not required at all for enforceability. *See, e.g.*, *Lee*, 2020 WL 3124256, at *2 ("Ticketmaster's website provided sufficient notice for constructive assent."); *Dohrmann v. Intuit, Inc.*, No. -- Fed. App'x. -- , 2020 WL 4601254, at *2 (9th Cir. Aug. 11, 2020) (same).

Plaintiffs were given as much time as needed to view, review and print these terms. (Skinner Decl. ¶ 13). As found in *Sollinger*, "a reasonable user would be on inquiry notice of the Informed Consent agreement." *See* 2020 WL 774135, at *2. The Arbitration Clause is easily located, is short, is in the same font as the rest of the agreement and is in clear, plain language. *See Sollinger*, 2020 WL 774135, at *3.

SDC, LLC maintains an electronic file for each customer, including assent to the Informed Consent Agreement. (Skinner Decl. ¶ 23.) Plaintiff Lucas checked the box and selected "Finish My Account" on November 14, 2019 at 7:24PM. (*Id.* ¶¶ 23, 24, noting all times in UTC--7 hours ahead of Pacific time.) Plaintiff Tasin checked the box and selected "Finish My Account" on December 7, 2019 at 2:03AM. (*Id.* ¶ 25.) Plaintiff Hooper checked (or left checked) the box and selected

13

1    "Finish My Account" on June 19, 2018 at 3:09AM.  (*Id.* ¶ 26.)  Plaintiff Smith
2    checked (or left checked) and selected "Finish My Account" on January 14, 2018 at
3    2:00AM.  (*Id.* ¶ 27.)[7]  There was mutual assent to the Informed Consent Agreement
4    when Plaintiffs selected "Finish My Account" with the checkbox checked.

5        **D.    Threshold Issues of Arbitrability Have Been Delegated.**

6        Before reaching the scope of the Arbitration Clause, this Court must first
7    decide who determines whether the dispute is arbitrable.  *See, e.g.*, *Worldwide Film*
8    *Productions, LLC v. JPMorgan Chase Bank, N.A.*, No. 1910337DSFJPRX, 2020 WL
9    2730926, at *2 (C.D. Cal. Mar. 13, 2020) ("But even these gateway issues can be
10    submitted to an arbitrator where there is clear and unmistakable evidence that the
11    parties intended that result.").  Under the FAA, the threshold "question of who
12    decides arbitrability is itself a question of contract."  *Henry Schein, Inc. v. Archer*
13    *and White*, 139 S. Ct. 524, 527 (2019).  That is, the FAA "allows parties to agree by
14    contract that an arbitrator, rather than a court, will resolve threshold arbitrability
15    questions as well as underlying merits disputes."  *Id.*  If the Arbitration Clause
16    "clearly and unmistakably" provides issues of arbitrability are for the *arbitrator* to
17    decide, this Court must compel arbitration. *See id.* at 530; *Bergeron v. Monex Deposit*
18    *Co.*, No. 17-1968JVSDFM, 2018 WL 3647017 at *2 (C.D. Cal. July 9, 2018).

19        The Arbitration Clause states that the arbitration shall be conducted pursuant
20    to the "the rules of the American Arbitration Association."  (Skinner Decl., Ex. 1-
21    4.)  Rule 7(a) of the AAA Rules states: "[t]he arbitrator shall have the power to rule
22    on his or her own jurisdiction, including any objections with respect to the existence,
23    scope, or validity of the arbitration agreement or to the arbitrability of any claim or
24    counterclaim."    AAA    Commercial    Arbitration    Rules    at    R-7(a),
25    https://adr.org/sites/default/files/Commercial%20Rules.pdf  (effective  October  1,

---

7        As noted above, the language next to the checkbox varied for Plaintiff Smith
at the time he selected "Finish My Account."  The language next to the checkbox
referred to "Terms of Use," rather than "Terms & SmilePay Conditions."  (Skinner
Decl. ¶ 11.)  That minor difference is irrelevant to this Motion, which turns on the
Informed Consent Agreement.

14

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.

2013); *see Henry Schein*, 139 S. Ct. at 528 (noting "[t]he rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions."); *Blanton*, 962 F.3d 842, 845 (6th Cir. 2020) (holding that incorporation of the AAA rules constitutes a clear and unmistakable delegation).

The Ninth Circuit and myriad courts in this Circuit have held that the incorporation of the AAA rules constitutes a clear and unmistakable delegation of authority to the arbitrator to decide threshold questions of arbitrability, including in TCPA cases. *See, e.g.*, *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233, 1241 (N.D. Cal. 2019) (applying delegation through the AAA rules in a TCPA case); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[W]e hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability," but reserving application to unsophisticated parties); *G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020) ("And the teenagers clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporates AAA rules.").[8]

Plaintiffs may contend they are unsophisticated.  Though the Ninth Circuit in *Opus Bank* did not address whether incorporation of the AAA rules constitutes clear and unmistakable delegation in the context of unsophisticated plaintiffs, subsequent case law makes clear it does.  For example, the Ninth Circuit's decision (albeit unpublished) in *G.G.* belies the relevance of the level of sophistication, as there the Ninth Circuit upheld delegation by incorporation of the AAA rules against teenagers. *See* 799 F. App'x at 558 (citing *Brennan*, 796 F.3d at 1130).[9]  Central District courts

---

[8]    To the extent Plaintiffs contend otherwise, there is no obligation to attach or provide the AAA rules, even to unsophisticated parties. *See, e.g.*, *Williams*, 417 F. Supp. 3d 1233, 1241 (N.D. Cal. 2019) ("[T]here is no duty to attach the AAA rules . . . ."); *Borgarding v. JPMorgan Chase Bank*, No. CV162485FMORAOX, 2016 WL 8904413, at *5 (C.D. Cal. Oct. 31, 2016) (collecting California state authority).

[9]    The Court in *G.G.* noted the sophistication of the plaintiffs did not matter because, under Washington law, parties to a contract are presumed to have read the agreement. *See* 799 F. App'x at 558.  The same is true in California. *See Luafau v. Affiliated Computer Servs., Inc.*, No. C 06-0347 CW, 2006 WL 1320472, at *3 (N.D. Cal. May 15, 2006) ("[A] party is presumed to have read the contract she signed.")

1    have concluded the majority position is incorporation of the AAA rules constitutes a

2    clear and unmistakable delegation, even as against unsophisticated parties. *See, e.g.*,

3    *Razzaghi v. UnitedHealth Grp.*, No. 18-01223AGJDEX, 2018 WL 7824552, at *2

4    (C.D. Cal. Sept. 17, 2018) ("This Court agrees with those cases deciding that

5    unsophisticated parties can agree to contracts that include terms showing a 'clear

6    and unmistakable' intent to delegate arbitrability issues to an arbitrator."); 

7    *Gountoumas v. Giaran, Inc*., No. 18-7720-JFW(PJWX), 2018 WL 6930761, at *6

8    (C.D. Cal. Nov. 21, 2018) ("[T]he Court agrees with the majority view, and

9    concludes that incorporation of AAA rules constitutes clear and unmistakable

10   evidence that the contracting parties agreed to arbitrate arbitrability, even if one or

11   more of the parties are unsophisticated."); *Key v. Optum Servs., Inc.*, No. 19-

12   00813AGJDEX, 2019 WL 6736924, at *2 (C.D. Cal. July 29, 2019) (rejecting the

13   unsophistication argument relating to whether incorporation of the AAA rules

14   constitutes a clear and unmistakable delegation); *Hernandez v. United HealthCare*

15   *Servs., Inc*., No. 18-0420DOCKESX, 2018 WL 7458649, at *5 (C.D. Cal. July 26,

16   2018) ("This Court is unwilling to create an exception to the *Opus Bank* holding for

17   unsophisticated parties, because the factors that might make someone 'sophisticated'

18   are poorly suited to a standard definition upon which parties can rely to avoid

19   uncertainty or surprise in the meaning of the instrument they signed."); *Miller v.*

20   *Time Warner Cable Inc.*, No. 816CV00329CASASX, 2016 WL 7471302, at *5 (C.D.

21   Cal. Dec. 27, 2016) ("[T]he greater weight of authority has concluded that the

22   holding of *Opus Bank* applies similarly to non-sophisticated parties).[10]

23

24

25

26   ---
     [10]    In addition to the difficulties pointed out by Judge Carter in determining who constitutes an unsophisticated party for purposes of evaluating the validity of an arbitration and/or delegation clause, *see Hernandez*, 2018 WL 7458649, at *5, it would be anomalous to carve out an exception to the axiom that "[t]o decipher [the parties'] intent, the Court need look no further than the agreement itself." *Razzaghi*, 2018 WL 7824552, at *2.

27

28

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.

1    Furthermore, one court just a few months ago determined the materially

2    identical delegation clause is a clear and conspicuous delegation of the threshold

3    issue of arbitrability as it related to claims against SDC, LLC. *See Sollinger*, 2020

4    WL 774135, at *3. It would be incongruous for the viability of the delegation

5    provision to turn on the jurisdiction evaluating it.

6    As a final matter, to the extent Plaintiffs contend their claims are not within

7    the Arbitration Clause to avoid delegation, that contention cannot prevail. This

8    argument--that a dispute is not within the scope of the Arbitration Clause--is in

9    essence the "wholly groundless" exception that the Supreme Court rejected in *Henry*

10   *Schein*. In *Henry Schein*, the arbitration clause—which, incorporated the AAA

11   rules—excepted actions seeking injunctive relief. *See* 139 S. Ct. at 528. The

12   appellee contended the arbitration argument was "wholly groundless" because it

13   sought injunctive relief and thus was excepted from arbitration. *Id.* The Supreme

14   Court held that the wholly groundless exception "confuses the question of who

15   decides arbitrability with the separate question of who prevails on arbitrability," and

16   "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the

17   courts must respect the parties' decision as embodied in the contract." *Id.* at 531.

18   The distinction is between an arbitration clause that carves out claims *from*

19   *arbitration in general* versus an arbitration agreement that carves out certain claims

20   *from the delegation clause*. The Sixth Circuit highlighted this distinction in its

21   *Blanton* decision, noting that if there is no carve out from delegation, the *arbitrator*

22   must interpret the remainder of the arbitration clause. *See Blanton*, 962 F.3d at 848

23   ("[T] he carveout goes to the scope of the agreement—a question that the agreement

24   otherwise delegates to the arbitrator—not the scope of the arbitrator's authority to

25   decide questions of 'arbitrability.'").[11] Plaintiffs will be unable to point to any carve

26   out or exception to the delegation provision itself.

27   ───────────────
[11]    Nor is the AAA's Healthcare Policy a defense to the delegation provision.
28   This dispute is not subject to the AAA's Healthcare Policy because it pertains solely
to healthcare cases "that relate to medical service," like negligence and malpractice.

1   The Parties have delegated the threshold issue of arbitrability to the arbitrator

2   pursuant to the Arbitration Clause and this Court should thus compel arbitration.

3   **E.    Even if This Court Were to Address Arbitrability, It Should Find**

4   **Plaintiffs' TCPA Claim to be Arbitrable.**

5   For the reasons detailed above, this Court need not address the question of

6   whether Plaintiffs' claims are within the purview of the Arbitration Clause.   If,

7   however, this Court does turn to the issue of arbitrability, the dispute plainly falls

8   within the scope of the Arbitration Clause.

9   As a guiding principle, "any doubts concerning the scope of arbitrable issues

10   should be resolved in favor of arbitration . . . ."  *Moses H. Cone Mem'l Hosp.*, 460

11   U.S. at 24-25.  There is a "presumption of arbitrability" that is overcome only where

12   "it may be said with positive assurance that the arbitration clause is not susceptible

13   of an interpretation that covers the asserted dispute."   *AT & T Techs., Inc. v.*

14   *Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also Cilluffo v. Cent.*

15   *Refrigerated Servs., Inc.*, No. 12-00886 VAP, 2012 WL 8523507, at *3 (C.D. Cal.

16   Sept. 24, 2012) (Phillips, J.) ("The standard for demonstrating arbitrability is not

17   high.") (internal quotations and citation omitted).  This presumption "is 'particularly

18   applicable' where the arbitration clause is broad."   *Robinson v. Delicious Vinyl*

19   *Records*, No. 13-cv-04111-CAS, 2014 WL 5332837, at *7 (C.D. Cal. Oct. 20, 2014)

20   (quoting *AT & T Techs.*, 475 U.S. at 650); *see also Mason v. BMW Fin. Servs.*, No.

21   EDCV1501323VAPDTBX, 2015 WL 12781212, at *4 (C.D. Cal. Nov. 17, 2015)

22   (Phillips, J.) ("In order to find that the Arbitration Clause does not apply to Plaintiff's

23   claim, the Court must be satisfied that 'it may be said with positive assurance that

24   the arbitration clause is not susceptible of an interpretation that covers the asserted

25   dispute.  Doubts should be resolved in favor of coverage.'") (quoting *AT&T Techs.*,

26   *Reed v. Johnson*, No. 14-cv-176, 2016 WL 913232, at *4 (N.D. Miss. Mar. 9, 2016)

27   (quoting Healthcare Policy Statement).  This case pertains to text messages.  Further, disputes ordered by a court to arbitration are excepted from the policy in any event.

28   *See id.*; *see also Life Care Centers of Am., Inc. v. Estate of Blair by & through Rhoden*, No. 17-cv-0249, 2017 WL 3432209, at *15 (D.N.M. Aug. 9, 2017).

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.

1   475 U.S. at 650).  Further, "the party resisting arbitration bears the burden of proving

2   that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Ala.*

3   *v. Randolph*, 531 U.S. 79, 91 (2000); *Mason*, 2015 WL 12781212, at *2 (same).

4        The Arbitration Clause broadly covers "*any dispute regarding*" products and

5   services offered through or by[12] SmileDirectClub.  (Skinner Decl., Ex. 1-4, emphasis

6   added.); *see Guerrero v. Equifax Credit Info. Servs., Inc.*, No. 11-6555 PSG PLAX,

7   2012 WL 7683512, at *8 (C.D. Cal. Feb. 24, 2012) (finding an arbitration clause

8   applying to "any claim, dispute, or controversy" to be broad); *Evergreen Media*

9   *Holdings, LLC v. Stroock & Stroock & Lavan LLP*, No. CV1501648ABVBKX, 2015

10  WL 12765630, at *5 (C.D. Cal. Apr. 16, 2015) (finding arbitration clause covering

11  "*any dispute*" related to a certain agreement to be broad) (emphasis in original);

12  *Lozada v. Progressive Leasing d/b/a Prog Leasing LLC*, No. 15-2812, 2016 WL

13  3620756, at *2 (E.D.N.Y. June 28, 2016) ("The Arbitration Provision's reference to

14  'any dispute' is the paradigm of a broad clause . . .") (internal citation omitted).  It

15  is critical to reiterate that "the threshold for arbitrability is not high."  *Lainer v. Uber*

16  *Techs., Inc.*, No. 1509925BROMRWX, 2016 WL 7444925, at *3 (C.D. Cal. May

17  11, 2016) (internal quotation and citation omitted); *Cilluffo*, 2012 WL 8523507, at

18  *3 (Phillips, J.) (same); *see also Mason*, 2015 WL 12781212, at *4 (Phillips, J.)

19  (finding FCRA claim within a broad arbitration clause); *Mason v. BMW Fin. Servs.*,

20  NA, No. EDCV1401357VAPDTBX, 2014 WL 12591299, at *4 (C.D. Cal. Sept. 18,

21  2014) (Phillips, J.) (finding FDCPA claim within a broad arbitration clause).

22        Plaintiffs' claims stem from texts concerning their aligner plans, impression

23  kits and appointments--*i.e.*, SmileDirectClub's products and services.  (*See* Dkt. 1

24  ¶¶ 9-19.)  Plaintiff Lucas created his account on November 14, 2019 and scheduled

25  an in-person appointment at a SmileShop.  (Skinner Decl. ¶ 19.)  Plaintiff Hooper

26  _____

27  [12]   The earlier version of the Arbitration Clause signed by Plaintiffs Hooper and
     Smith stated "offered by," while the later version signed by Plaintiffs Lucas and
28  Tasin stated "offered through."  (Skinner Decl., Ex. 1-4.)  Defendants contend there
     is no material difference between "by" and "through" pertinent to this case.

1   created his account on June 19, 2018 and scheduled an in-person appointment at a

2   SmileShop. (*Id.* ¶ 20.) Plaintiff Tasin created his account on December 7, 2019 and

3   scheduled an in-person appointment at a SmileShop. (*Id.* ¶ 21.) Plaintiff Smith

4   created an account on January 14, 2018 and, though initially scheduled an

5   appointment, eventually requested a doctor-prescribed impression kit. (*Id.* ¶ 22, 31.)

6       At Plaintiffs Lucas's, Hooper's and Tasin's subsequent appointments, they

7   initiated the process to obtain their clear aligner treatment plans. (*Id.* ¶ 28.) Their

8   information and draft treatment plans were sent to a dentist or orthodontist licensed

9   to practice dentistry in the state of their residences for assessment, diagnosis and, if

10  appropriate, treatment. (*Id.* ¶ 29.) Plaintiff Lucas's aligner treatment plan was

11  approved by his treating dentist or orthodontist on November 22, 2019, Plaintiff

12  Hooper's plan was approved by his treating dentist or orthodontist on June 20, 2018,

13  and Plaintiff Tasin's plan was approved by his treating dentist or orthodontist on

14  December 13, 2019. (*Id.* ¶ 30.) Plaintiff Smith requested a doctor-prescribed

15  impression kit, and received it on or about January 15, 2018, but did not return it to

16  have his viability for treatment evaluated by a dentist or orthodontist. (*Id.* ¶ 31.)

17      Plaintiffs Lucas, Hooper and Tasin attended their appointments, but did not

18  complete their payments to receive their aligner therapy. (*Id.* ¶ 32.) They were thus

19  sent messages by SDC, LLC concerning appointments, completing their scans/kits

20  and their purchases, approval of their treatment plans and scheduling appointments

21  once Smile Plans expired without payment. (*Id.* ¶ 32-36) Plaintiff Smith did not

22  return the doctor-prescribed impression kit, and thus messages were sent by SDC,

23  LLC concerning opportunities to make an appointment. (*Id.* ¶ 37.) These are the

24  messages that form the basis of Plaintiffs' claims. (*See* Dkt. 1 ¶¶ 8-19.) Plaintiffs'

25  claims thus focus entirely on SmileDirectClub's "*products and service*s offered"—

26  specifically, SDC, LLC's outreach to Plaintiffs to attend appointments, receive their

27  aligner plans or complete scans or impressions. Plaintiffs specifically allege that the

28  messages at issue pertained to SmileDirectClub's offered "products and services."

1    (Dkt. 1 ¶ 19.)  If Plaintiffs did not open their accounts and seek out and initiate the

2    evaluation for clear aligner therapy, they would not have received text messages

3    concerning their plans, orders, impressions or appointments.  (Skinner Decl. ¶ 38.)

4         In analogous situations, courts have found TCPA claims within the scope of

5    the arbitration clause.  For example, in *Lainer v. Uber*, Judge O'Connell evaluated

6    a motion to compel arbitration over alleged driver recruitment text messages in

7    violation of the TCPA.  *See* No. CV1509925BROMRWX, 2016 WL 7444925, at *1

8    (C.D. Cal. May 11, 2016).  The plaintiff had agreed to Uber's arbitration clause,

9    which covered "any dispute, claim or controversy arising out of or relating to these

10   Terms or the breach, termination, enforcement, interpretation or validity thereof or

11   the use of the Services . . . ."  *Id.*  The plaintiff argued that she signed up for Uber's

12   services, but not to be a driver, and thus the messages were outside the scope of the

13   clause.  Judge O'Connell determined that the dispute was covered by the clause, in

14   part because the messages in fact related to Uber's transportation services.  *Id.* at *4.

15        In *Sherman v. RMH*, a Southern District of California court evaluated a motion

16   to compel arbitration of a TCPA claim stemming from a marketing call following

17   up on the one year anniversary of the plaintiff's car purchase.  *See* No. 13CV1986-

18   WQH-WMC, 2014 WL 30318, at *1 (S.D. Cal. Jan. 2, 2014).  The arbitration clause

19   covered "[a]ny claim or dispute . . . , which arise out of or relate to your credit

20   application, purchase or condition of this vehicle, this contract or any resulting

21   transaction or relationship . . . ."  *Id.* at *2.  The Court readily concluded that the

22   prerecorded call on the anniversary of the plaintiff's purchase "relate to his Contract

23   with Defendant, and, accordingly, [the claims] are subject to arbitration."  *Id.* at *9.

24        In *Thomas v. Wells Fargo Dealer Services*, Judge Klausner evaluated a

25   motion to compel arbitration of a TCPA action regarding debt calls pertaining to an

26   installment sales contract.  *See* No. CV135168RGKPJWX, 2013 WL 12114768, at

27   *1 (C.D. Cal. Oct. 1, 2013).  The arbitration clause covered disputes arising out of

28   or relating to the credit application.  *Id.* at *2.  The Court thus concluded that "the

21

1   dispute is clearly one that 'arises out of or relates to [the] credit application'" *Id.*;

2   *see also Wishner v. Wells Fargo Bank*, No. CV-16-2832-MWF-SKX, 2016 WL

3   10988765, at *2-3 (C.D. Cal. Sept. 28, 2016) (finding TCPA suit over debt-related

4   calls encompassed by arbitration clause that covered "any dispute relating in any

5   way to the Card or related services or matters described in the Agreement . . . .").

6       And, in *Augustine v. TLC Resorts Vacation Club*, a Southern District of

7   California court evaluated a motion to compel arbitration over debt-related calls

8   pertaining to a timeshare membership. *See* No. 18-01120, 2018 WL 3913923, at *1

9   (S.D. Cal. Aug. 16, 2018).  The arbitration clause covered "all disputes and claims

10  between us that can't otherwise be resolved through customer service." *Id.* at *2.

11  The plaintiff claimed the TCPA claims did not touch matters of contract or purchase

12  of timeshares. *Id.* at *8.  The Court nevertheless held that "[g]iven the circumstances

13  of this case and the plain, broad language of the arbitration provision, as well as the

14  strong presumption in favor of arbitration, the Court concludes that Plaintiff's claims

15  fall within the scope of the arbitration provision." *Id.*

16      Myriad other courts have similarly found TCPA claims within the scope of an

17  arbitration clause. *See, e.g.*, *Lozada*, 2016 WL 3620756, at *3 (finding TCPA claim

18  within scope of lease's arbitration clause); *see also id.* (collecting cases finding

19  TCPA claims arbitrable); *Kellison v. First Premier Bank*, No. CV 17-02318 SJO

20  (KK), 2018 WL 5880614, at *3 (C.D. Cal. Mar. 5, 2018) ("Plaintiff's claims arise

21  from Defendants' attempts to collect its debts pursuant to the Cardholder Agreement,

22  the Court finds that the claims fall within the scope of those considered in the

23  arbitration agreement."); *Hunter v. First Nat'l Bank of Omaha, NA*, No. 15-CV-808-

24  H-NLS, 2015 WL 12672151, at *4 (S.D. Cal. July 31, 2015) (finding TCPA claim

25  stemming from debt calls arbitrable under clause applying to claims arising from or

26  relating to the account); *Lemieux v. HSBC Card Servs., Inc.*, No. 07-CV-1581-H

27  (BLM), 2007 WL 9776742, at *4 (S.D. Cal. Dec. 13, 2007) (same); *Coppock v.

28  Citigroup, Inc.*, No. 11-1984, 2013 WL 1192632, at *5 (W.D. Wash. Mar. 22, 2013)

22

1  ("The arbitration agreement clearly covers the TCPA and FDCPA claims.  Citi made
2  the calls to collect a debt it thought Coppock owed on her credit card account.");
3  *Malik v. F-19 Holdings*, No. 15-130, 2016 WL 2939150, at *3-4 (E.D. Ky. May 19,
4  2016) (holding an arbitration clause in a gym membership agreement covered text
5  messaging urging the plaintiff to buy goods and services because the clause covered
6  "any dispute" that "arises on an interpretation of the rights, duties and obligations"
7  under the agreement"); *Moore v. T-Mobile USA*, No. 10-527, 2012 WL 13036858,
8  at *7 (E.D.N.Y. Sept. 28, 2012) (finding TCPA claims relating to attempts to resolve
9  billing dispute within arbitration clause); *Kilberg v. Discover Fin. Servs.,* No. 16-
10  5168, 2017 WL 3528005, at *4 (D.N.J. Aug. 16, 2017) ("[A] TCPA claim naturally
11  arises from and is related to Plaintiff's Credit Card Account because it involved
12  autodialed telephone calls to Plaintiff concerning the outstanding balance . . . .").

13  Much like the calls and messages at issue in *Lainer*, *Sherman*, *Thomas* and
14  *Augustine*, there can be little doubt the text messages at issue here--which concerned
15  Plaintiffs' appointments, aligner scans, kits, treatment plans, completing their
16  purchases and booking new appointments following the expiration of their Smile
17  Plan or the failure to return a kit--fall within the language "*any* dispute regarding the
18  products and services" offered through or by SmileDirectClub.  (Skinner Decl. ¶¶
19  32-37.)  The aligner treatments, treatment plans, scans, impressions and
20  appointments about which SDC, LLC contacted Plaintiffs *are* the products and
21  services offered through SmileDirectClub.  This conclusion is all the more warranted
22  in light of the axiom that "as a matter of federal law, any doubts concerning the scope
23  of arbitrable issues should be resolved in favor of arbitration . . . ."  *Moses H. Cone*,
24  460 U.S. at 24–25.

25  Plaintiffs may claim their claims are carved out because the Arbitration Clause
26  excepts "claims within the jurisdiction of Small Claims Court."  (Skinner Decl., Ex.
27  1-4.)  Plaintiffs, however, filed a class action *in federal court*, seeking up to $1,500
28  *per text* and believe there are "thousands" of class members.  (Dkt. 1 ¶¶ 28, 36.); *see,*

23

1  *e.g.*, *Gadomski v. Wells Fargo Bank N.A.*, 281 F. Supp. 3d 1015, 1021 (E.D. Cal.
2  2018) ("[T]he flaw in Plaintiff's logic is that neither she nor the other similarly
3  situated class members are moving forward as individuals. . . .  Surely, Plaintiff was
4  free to assert her claims on a strictly individual basis in small claims court.  However,
5  that is not what she chose to do."); *Botorff v. Amerco*, No. 12-01286, 2012 WL
6  6628952, at *6 (E.D. Cal. Dec. 19, 2012) (same); *Reeners v. Verizon Commc'ns*, No.
7  11-0573, 2011 WL 2791262, at *2 (M.D. Tenn. July 14, 2011) (finding a class action
8  "does not fit within the scope of the small claims court exception to arbitration.");
9  *Lewis v. Advance Am., Cash Advance Centers of Illinois*, No. 13-cv-942, 2014 WL
10  47125, at *4 (S.D. Ill. Jan. 6, 2014) ("[T]he fact remains that he did not bring this
11  case in a small claims court.").  Whether Plaintiffs *could* file *individual* claims in
12  small claims court, they cannot use this hypothetical to evade arbitration.

13       As a final matter, Plaintiffs should be compelled to arbitrate their claims
14  individually for two reasons.  <u>First</u>, the Arbitration Clause agreed to by Plaintiffs
15  Lucas and Tasin specifically state that arbitration "will take place on an individual
16  basis" and that "class arbitrations . . . are not permitted . . . ."  (Skinner Decl., Ex. 1
17  at 5, Ex. 2 at 5.)[13]  <u>Second</u>, though the clause agreed to by Plaintiffs Hooper and
18  Smith do not contain this specific language, the Supreme Court holds that "a court
19  may not compel arbitration on a classwide basis when an agreement is 'silent' on the
20  availability of such arbitration," or even ambiguous on the issue.  *Lamps Plus, Inc.
21  v. Varela*, 139 S. Ct. 1407, 1412 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds
22  Int'l Corp.*, 559 U.S. 662, 684 (2010)); *see also id.* at 1419 ("Courts may not infer
23  from an ambiguous agreement that parties have consented to arbitrate on a classwide
24  basis."); *Cervantes v. Voortman Cookies Ltd.*, No. 3:19-CV-00700-H-BGS, 2019
25  WL 3413419, at *7 (S.D. Cal. July 29, 2019) ("[T]here is no affirmative contractual

26
27  ─────────────────
   [13]     This Clause also bars class actions generally.  Should this case proceed,
28  Defendants intend to raise this class waiver argument.

─────────────────
24

1    basis for concluding that the parties agreed to class-wide arbitration.").[14]  The clause

2    agreed to by Plaintiffs Hooper and Smith thus also does not permit class arbitration.

3        Plaintiffs' TCPA claims fall within the scope of the Arbitration Clause and

4    this Court should thus compel individual arbitration of Plaintiffs' respective claims.

5        **F.    This Court Should Stay This Action Pending Arbitration.**

6        The FAA provides that this Court "upon being satisfied that the issue involved

7    in such suit or proceeding is referable to arbitration . . . , shall on application of one

8    of the parties stay the trial of the action until such arbitration has been had . . . ."  9

9    U.S.C. § 3.  Staying a matter pending arbitration is appropriate "[b]ecause the FAA

10   requires the stay of judicial proceedings pending the arbitration of claims" and "the

11   Petition requests this relief . . . ."  *Spanos v. Kaiser Found. Health Plan*, No.

12   EDCV1900097JAKSPX, 2019 WL 7945608, at *4 (C.D. Cal. Sept. 25, 2019);

13   *Roberts*, 2020 WL 2213464, at *5 (staying case).  A stay is particularly prudent

14   where arbitrability is delegated.  *See, e.g.*, *Gonzalez v. Coverall N. Am., Inc.*, No. 16-

15   cv-2287JGBKKX, 2017 WL 4676576, at *6 (C.D. Cal. Apr. 13, 2017) (staying

16   action); *High-Bassalik v. Al Jazeera Am.*, No. 215CV04427CASFFMX, 2015 WL

17   9695227, at *8 (C.D. Cal. Nov. 2, 2015) (same).  Because the threshold issue of

18   arbitrability was delegated (and even if this Court were to reach arbitrability), this

19   Court should compel arbitration and stay this matter.

20                    **<u>CONCLUSION</u>**

21       For the foregoing reasons, SDCI and SDC, LLC respectfully request that this

22   Court (i) compel individual arbitration of Plaintiffs' respective claims and stay this

23   case pending arbitration; and (ii) award all other relief it deems equitable and just.

24   Dated:  September 8, 2020          By:    <u>/s/ Mark S. Eisen</u>

25

26   ---
     [14]    The Court in *Lamps Plus* did not determine whether the class arbitration issue
     is an issue for an arbitrator to decide.  Courts in this Circuit hold it is an issue for the
27   court, absent clear evidence the particular question is delegated.  *See Cervantes*,
     2019 WL 3413419, at *6-7; *Dominguez v. Stone Brewing Co., LLC*, No. 20-CV-
28   251-WQH-BLM, 2020 WL 3606396, at *12 (S.D. Cal. July 2, 2020).  To the extent
     this Court addresses the issue, arbitration must take place on an individual basis.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
Mark S. Eisen (SBN289009)
meisen@beneschlaw.com
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone:  312.212.4949
Facsimile:   312.767.9192

MEMO. OF PTS. AND AUTHORITIES IN SUPP. OF MOTION TO COMPEL ARB.